UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRESSER-RAND COMPANY,<br><br>               Plaintiff,<br><br>     -against-<br><br>PETRÓLEOS DE VENEZUELA, S.A. and<br>PDVSA PETRÓLEO, S.A.,<br><br>           Defendants. | Docket No.: 1:19-cv-002689-LLS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RELEIF
PURSUANT TO FED. R. CIV. P. 56(d)**

HOGAN LOVELLS US LLP
  Dennis H. Tracey, III
  Robin L. Muir
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendants Petróleos de
Venezuela, S.A. and PDVSA Petróleo,
S.A*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................... 1

BACKGROUND ........................................................................................ 2

I.     POLITICAL UNCERTAINTY IN VENEZUELA ............................... 2

II.    THIS ACTION ............................................................................. 4

ARGUMENT ............................................................................................ 4

I.     THE COURT SHOULD GRANT DEFENDANTS' MOTION FOR RELIEF
       PURSUANT TO RULE 56(d). ........................................................ 4

       A.     Defendants Are Unable to Access the Documents and Information Relevant to
              Dresser-Rand's Claims. ........................................................ 6

       B.     These Inaccessible Documents and Information Are Necessary for the Defense
              of this Action ...................................................................... 7

       C.     Defendants are Currently Powerless to Obtain Access to the Relevant Facts. ......... 9

II.    THE COURT SHOULD DENY OR DEFER CONSIDERATION OF
       DRESSER-RAND'S MOTION FOR SUMMARY JUDGMENT AND STAY ALL
       PROCEEDINGS UNTIL DEFENDANTS CAN ACCESS THE DOCUMENTS AND
       PERSONNEL NECESSARY TO RESPOND TO DRESSER-RAND'S CLAIMS. ........... 10

       A.     Defendants Will Be Significantly Prejudiced if a Stay is Not Granted. ................. 12

       B.     In Light of the Sanctions Imposed by OFAC on PDVSA, Plaintiff Will Not Be
              Prejudiced By the Requested Stay. ........................................ 12

       C.     The Requested Stay Will Likely Avoid Greater Delays in the Long Run. ............. 14

       D.     The Unparalleled Collapse of Venezuela and Claim Restructuring Process. .......... 14

       E.     Numerous Other Courts Have Recently Granted Stays in Other Litigation
              Involving Venezuelan-Owned Companies. ............................... 16

CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Home Assurance Co. v. Zim Jamaica*,
418 F. Supp. 2d 537 (S.D.N.Y. 2006) ........................................................................... 11, 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 11

*Bank of Am., Nat'l Ass'n v. Wm. V. Schmidt Co., Inc.*,
No. 10 Civ. 4926(NRB), 2011 WL 1334844 (S.D.N.Y. March 25, 2011) ............................. 8

*Brown v. Ashcroft*,
360 F.3d 346 (2d Cir. 2004) .......................................................................................... 12

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*,
769 F.2d 919 (2d Cir. 1985) ............................................................................................ 5

*Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*,
117 F. Supp. 2d 394 (S.D.N.Y. 2000) ............................................................................ 8, 9

*Delgado v. NJ Transit Rail Operations, Inc.*,
No. 1:18-cv-02079 (SDA), 2019 WL 697289 (S.D.N.Y. Feb. 20, 2019) ............................. 11

*Delphi-Delco Elec. Sys. v. M/V Nedlloyd Europa*,
324 F. Supp. 2d 403 (S.D.N.Y. 2004) ............................................................................. 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611, 103 S. Ct. 2591 (1983) ................................................................................ 7

*Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*,
903 F. Supp. 623 (S.D.N.Y. 1995) .................................................................................... 8

*Guar. Trust Co. v. United States*,
304 U.S. 126, 58 S. Ct. 785 (1938) ................................................................................... 6

*Israel v. Chabra*,
537 F.3d 86 (2d Cir. 2008) .............................................................................................. 8

*Kigin v. State of N.Y. Workers' Comp. Bd.*,
24 N.Y.3d 459, 999 N.Y.S.2d 800 (N.Y. 2014) ................................................................. 12

*Landis v. N. Am. Co.*,
299 U.S. 248, 57 S. Ct. 163 (1936) ................................................................................. 11

*Landmark Land Company, Inc. v. Sprague*,
701 F.2d 1065 (2d Cir. 1983) ............................................................................................ 5

**TABLE OF AUTHORITIES – Continued**

**Page(s)**

*Mathews v. Eldridge*,
 424 U.S. 319 (1976) ...................................................................................12

*MLP U.S.A., Inc. v. Motheral*,
 No. 05 Civ. 10796(LLS), 2006 WL 2389348 (S.D.N.Y. Aug. 17, 2006) ...............................8

*MM Ariz. Holdings LLC v. Bonanno*,
 658 F. Supp. 2d 589 (S.D.N.Y. 2009) .........................................................5

*Pfizer v. Gov't of India*,
 434 U.S. 308, 98 S. Ct. 584 (1978) .............................................................6

*Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*,
 87 F. Supp. 3d 463 (S.D.N.Y. 2015) ..........................................................11

*Rosenfeld v. Hartford Fire Ins. Co.*,
 No. 88 Civ. 2153(MJL), 1988 WL 49065 (S.D.N.Y. May 12, 1988) ...................14

*Royal Park Invs. SA/NV v. Bank of Am. Corp.*,
 941 F. Supp. 2d 367 (S.D.N.Y. 2013) .........................................................11

*Vasta v. Super Stop & Shop #0509*,
 14 Civ. 3287 (ER), 2016 WL 5720772 (S.D.N.Y. Sept. 29, 2016) .......................5

*WestRM-West Risk Mkts. v. Lumbermens Mut. Cas. Co.*,
 314 F. Supp. 2d 229 (S.D.N.Y. 2004) ..........................................................8

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
 135 S. Ct. 2076 (2015) .............................................................................6

**Regulations**

31 C.F.R. § 591.406 ..................................................................................13

31 C.F.R. § 591.506 ..................................................................................13

**Other Authorities**

Organization of American States, Press Release, OAS Report on Venezuelan
 Migrants and Refugees: "An Unprecedented Crisis in the Region" (Mar. 8,
 2019), available at https://www.oas.org/en/media_center/press_release.asp
 ?sCodigo=E-009/19..................................................................................15

Understanding Venezuela's collapse," Harvard Gazette (Feb. 12, 2019), available
 at https://news.harvard. edu/gazette/story/2019/02/harvard-expert-tries-to-
 make-sense-of-venezuelas-collapse ..........................................................15

**TABLE OF AUTHORITIES – Continued**

**Page(s)**

U.S. Dep't State, Press Statement, Continuing U.S. Diplomatic Presence in
   Venezuela (Jan. 23, 2019), available at https://www.state.gov/secretary/
   remarks/2019/01/288545.htm ............................................................................................3

White House, Remarks by Vice President Pence to the Lima Group, Bogota,
   Colombia (Feb. 25, 2019), available at https://www.whitehouse.gov/briefings-
   statements/remarks-vice-president-pence-lima-group-bogota-colombia ................................3

Defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo") (together, "Defendants") respectfully submit this memorandum in support of their motion, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, for an order denying or deferring consideration of the motion for summary judgment of plaintiff Dresser-Rand Company ("Plaintiff" or "Dresser-Rand") and staying all proceedings.

## PRELIMINARY STATEMENT

Relief under Rule 56(d) is necessary while the Venezuelan government is transitioning from the illegitimate and unrecognized Nicolás Maduro regime to the newly-installed government of Juan Guaidó. The Guaidó government has recently been recognized by the United States as the only legitimate government in Venezuela, and therefore Guaidó is the only person who is authorized to respond to the claims against Defendants (PDVSA is a wholly-owned instrumentality of Venezuela, and Petróleo is wholly-owned by PDVSA). However, the Maduro government has prevented the incoming Guaidó government from accessing the information and government administrative functions that would allow it to fully and effectively exercise its authority. For example, the Guaidó government cannot access the documents or electronic records of PDVSA or Petróleo; cannot interview relevant personnel; and indeed cannot even determine the identity of the government officials and personnel involved in the underlying dispute with Dresser-Rand. Defendants therefore are unable to respond to Dresser-Rand's claims until the government transition is complete.

Any prejudice to Dresser-Rand will be minimal in contrast to the significant prejudice to Defendants if a stay is not granted. Forcing Defendants to respond to a claim for in excess of $130 million without affording Defendants access to the basic facts necessary to defend the claim would be a denial of fundamental due process. On the other hand, granting a stay would potentially delay the adjudication of the claims for a limited period. But such a delay would

likely have no practical effect, as Dresser-Rand cannot currently enforce any judgment against Defendants without first obtaining a special license from the U.S. Treasury Department's Office of Foreign Asset Control ("OFAC"). The prohibition on unlicensed transactions with Defendants is likely to continue until the transition of control of Defendants to President Guaidó.

For these reasons and those that follow, Defendants respectfully request that the Court deny or defer consideration of Dresser-Rand's motion for summary judgment and stay all proceedings until the government transition is complete and Defendants are able to access the documents and personnel necessary to respond to Dresser-Rand's claims.

## BACKGROUND

### I. POLITICAL UNCERTAINTY IN VENEZUELA

Pursuant to article 233 of the Venezuelan Constitution, beginning on January 10, 2019, the position of Presidency of Venezuela has been held by the President of the Venezuelan National Assembly, Deputy Juan Guaidó. (Hernández Decl. ¶ 3.)[1] On January 23, 2019, Juan Guaidó ratified the application of article 233, acting as Interim President of Venezuela. (*Id.*) That same day, President Donald Trump issued a statement officially recognizing President Guaidó as the Interim President of Venezuela and rejecting the legitimacy of the Maduro government. (*Id.*)

In response to President Trump's recognition of President Guaidó, former president Maduro purported to expel all American diplomatic personnel from Venezuela. Secretary of State Pompeo rejected Mr. Maduro's assertion of political and diplomatic authority, stating that "[t]he United States does not recognize the Maduro regime as the government of Venezuela. He explained "the United States maintains diplomatic relations with Venezuela and will conduct our

---

[1] "Hernandez Decl." refers to the Declaration of José Ignacio Hernández González in Support of Defendants' Motion for Relief Pursuant to Fed. R. Civ. P. 56(d), dated May 31, 2019, submitted herewith.

relations with Venezuela through the government of interim President Guaidó, who has invited our mission to remain in Venezuela."[2]  On February 25, Vice President Pence reiterated the position of the United States: "President Guaidó, President Donald Trump asked me to be here today to deliver a simple message to you and to the people of Venezuela:  Estamos con ustedes. We are with you 100 percent.  We stand with you in America, along with all the nations gathered here today, and we will keep standing with you until democracy and your libertad are restored."[3]

To facilitate the transition to the newly-installed Guaidó government, the National Assembly enacted the "Statute Governing the Transition to Democracy to Restore the Validity of the Constitution of the Bolivarian Republic of Venezuela" (the "Transition Statute"). (Hernández Decl. ¶ 4.)  Pursuant to Article 15.b of the Transition Statute, the Special Attorney General designated by Interim President Guaidó has the power to appoint counsel of state-owned entities in international litigation.  (*Id.*)  On February 5, 2019, pursuant to that authority, President Guaidó appointed José Ignacio Hernández as the Special Attorney General of Venezuela.  (*Id.* Ex. 1.)

On March 19, 2019, the National Assembly approved a resolution that ratified the position of the Venezuelan government that any official action by Mr. Reinaldo Munoz Pedroza Attorney General of the Republic (as Maduro's illegally appointed Attorney General) was a usurpation of government authority and ratified Mr. Hernández as the only Special Attorney General that has the power to represent the Republic and state-owned entities and appoint legal

---

[2] U.S. Dep't of State, Press Statement, Continuing U.S. Diplomatic Presence in Venezuela (Jan. 23, 2019), available at https://www.state.gov/secretary/remarks/2019/01/288545.htm.

[3] White House, Remarks by Vice President Pence to the Lima Group, Bogota, Colombia (Feb. 25, 2019), available at https://www.whitehouse.gov/briefings-statements/remarks-vice-president-pence-lima-group-bogota-colombia.

counsel.  (*Id.* ¶ 5, Ex. 2.)  As a result, the U.S. judiciary has recognized interim president Juan Guaidó as the sole legitimate government in Venezuela.[4]

## II.      THIS ACTION

Plaintiff Dresser-Rand commenced this action by filing a motion for summary judgment in lieu of a complaint on February 26, 2019 in the Supreme Court of the State of New York, New York County.  Defendants were both served with process on February 27, 2019.  On March 26, 2019, Defendants timely removed the action to this Court.

On March 29, 2019, Defendants filed a letter requesting a pre-motion conference in connection with their contemplated motion for a stay of all proceedings.  Dresser-Rand opposed Defendants' request.  The parties appeared before this Court for a pre-motion conference on May 3, 2019.  At that conference, this Court granted Defendants permission to move for relief pursuant to Rule 56(d) of the Federal Rules of Civil Procedure by June 3, 2019.  As permitted by the Court, Defendants now make the instant motion.

## <u>ARGUMENT</u>

## I.      THE COURT SHOULD GRANT DEFENDANTS' MOTION FOR RELIEF PURSUANT TO RULE 56(d).

Defendants do not have access to the evidence that they need to oppose Dresser-Rand's motion for summary judgment.  Rule 56(d) authorizes a court faced with this situation to: "(1)

---

[4] On May 1, 2019, in the appeal of the matter of *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, Dkt. No. 1785518 (D.C. Cir. May 1, 2019), the United States Court of Appeals for the District of Columbia Circuit recognized the sole authority of the Special Attorney General to represent the Republic of Venezuela in litigation in the United States.  The Court stated that the Executive Branch's "action in recognizing a foreign government . . . is conclusive on all domestic courts, which are bound to accept that determination. . . ." *Id.*  Relying on this order, on May 21, 2019, the United States District Court for the District of Columbia "recognize[d] the Guaidó government lawyers as the appropriate representatives of Venezuela" in *OI European Group B.V. v. Bolivarian Republic of Venezuela*, No. 16-cv-01533, ECF No. 84 (D.D.C. May 21, 2019).  The Court stated "[i]n light of this Order, and because the United States has recognized Juan Guaidó as the Interim President of Venezuela, the Court will recognize the Guaidó government lawyers as the appropriate representatives of Venezuela . . . ." *Id.*

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

> A party resisting summary judgment on this ground must file an affidavit explaining: (1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful.

*Vasta v. Super Stop & Shop #0509*, 14 Civ. 3287 (ER), 2016 WL 5720772, at *4 (S.D.N.Y. Sept. 29, 2016) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *MM Ariz. Holdings LLC v. Bonanno*, 658 F. Supp. 2d 589, 596 (S.D.N.Y. 2009)).  The Second Circuit has held that, when applying this Rule, "a denial of access to relevant information weighs in favor of the party opposing a motion for summary judgment." *Burlington*, 769 F.2d at 925 (citing *Landmark Land Company, Inc. v. Sprague*, 701 F.2d 1065, 1070 (2d Cir. 1983)).

Dresser-Rand's claims in this case are premised on PDVSA's alleged default under its Note Agreement with Dresser-Rand, which is guaranteed by Petróleo.  (Scherzer Aff. Ex. A.)[5] Subsection (a) of Article VII of the Note Agreement provides that "the failure to pay the principal of, or interest on any of the Notes, when such principal becomes due and payable, including at any of the Repayment Dates, by acceleration or otherwise, and such failure continues for a period of five (5) days after written notice thereof has been given to the Issuer" is an "Event of Default," which permits the "Required Noteholders," "by notice to the Issuer, [to] declare the Notes then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Notes so declared to be due and payable, together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Issuer accrued

---

[5] "Scherzer Aff." refers to the Affidavit if Erik Scherzer, dated February 26, 2019, submitted by Dresser-Rand in support of its motion for summary judgment in lieu of complaint.  (ECF No. 1-1.)

hereunder . . . ." (*Id.* Ex. A at Art. VII.)  Dresser-Rand alleges that PDVSA only made the first two payments under the stipulated payment schedule and has been in default since October 20, 2017.  (*Id.* ¶ 7.)  Dresser-Rand further alleges that on February 14, 2019, it sent Defendants a Notice of Default demanding payment of all outstanding amounts, and that Defendants failed to respond, and as a result, on February 21, 2019, Dresser-Rand sent Defendants a Notice of Acceleration, which called the entire loan amount due and owing.  (*Id.* ¶¶ 10-14, Exs. C-D.) According to Dresser-Rand, Defendants have not made any additional payments under the Note Agreement, and commenced this action to recover all amounts due.  (*Id.* ¶ 15.)

As explained below, and further detailed in the accompanying Hernández Declaration, despite their efforts, Defendants currently do not have access to the documents, records, and personnel of PDVSA that are necessary to demonstrate the existence of a triable issue of material fact with respect to Dresser-Rand's claims.  This Court should therefore grant Defendants' motion for relief under Rule 56(d) and deny or defer consideration of Dresser-Rand's motion for summary judgment.

### A.  Defendants Are Unable to Access the Documents and Information Relevant to Dresser-Rand's Claims.

Relief under Rule 56(d) is warranted in this case because although the Guaidó government is the sole government recognized by the United States,[6] it does not have full access

---

[6] Because the United States has recognized Mr. Guaidó as the lawful President of Venezuela, only the government of Mr. Guaidó or his representatives can assert the interests of Venezuela in U.S. courts.  *See Guar. Trust Co. v. United States*, 304 U.S. 126, 137, 58 S. Ct. 785, 791 (1938) (holding that "suit [on behalf of foreign state] may be maintained in our courts only by that government which has been recognized by the political department of our own government as the authorized government of the foreign state"); *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2084 (2015) ("Legal consequences follow formal recognition.  Recognized sovereigns may sue in United States courts."); *see also* Restatement (Third) of Foreign Relations Law § 204 ("Under the Constitution of the United States the President has exclusive authority to recognize or not to recognize a foreign state or government."). And only the representatives and instrumentalities of a government that has been recognized by the United States have standing to sue in U.S. courts or otherwise can avail themselves of the U.S. judicial system.  *See Pfizer v. Gov't of India*, 434 U.S. 308, 319-20, 98 S. Ct. 584, 591 (1978) ("It has long been established that only governments recognized by the United States and at peace with us are entitled to access to our courts, and that it is within the exclusive power of the Executive Branch to determine which nations are entitled to sue." (citations omitted)); *see*

to the personnel and documents of the government and its instrumentalities, including Defendants.  As explained in the Hernández Declaration, the illegitimate Maduro regime has maintained substantial control of the operation of the Venezuelan government.  (Hernández Decl. ¶ 6.)  Maduro has refused to recognize the Constitutional authority of President Guaidó and has instead unlawfully usurped the operations of government.  (*Id.*)  Among other things, the Maduro regime controls the Central Bank, the Supreme Court (where Maduro has unlawfully installed judges loyal to the illegitimate regime), the Finance Ministry, and the Venezuelan operations and assets of the key government owned entities, including PDVSA and Petróleo.  (*Id.*)

As a result, the Guaidó government cannot access the documents, electronic records, or personnel of PDVSA or Petróleo.  (*Id.* ¶ 7.)  Nor does it have access to the bank accounts or assets of the government in Venezuela.  (*Id.*)  Specifically, the Guaidó government is unable to confer with the individuals who were involved in the negotiation or execution of the Note Agreement upon which Dresser-Rand bases its claims.  (*Id.* ¶ 13.)  It is also unable to review the files relating to the Note Agreement, and any related payments or correspondence.  (*Id.*)  It therefore is unable to confirm or refute Dresser-Rand's allegation that payment has not been made on the Note, or whether the Note has been amended, modified, or satisfied.  (*Id.*)

**B.  These Inaccessible Documents and Information Are Necessary for the Defense of this Action**

Access to the documents and records of PDVSA and PDVSA personnel with knowledge of the Note Agreement with Dresser-Rand and the instant dispute – none of which are currently accessible to Defendants – is necessary to evaluate the instant claims asserted by Dresser-Rand

---

*also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 632 n. 25, 103 S. Ct. 2591, 2603 n. 25 (1983) (denying agents and instrumentalities of unrecognized governments access to United States courts) (citations omitted), *superseded by statute*, as stated in *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 819 (2018).

and to determine Defendants' defenses to those claims.[7]  For example, information regarding the negotiation and execution of the Note Agreement and any subsequent modifications is necessary to determine whether the Note was entered into with proper authority, whether there was fraud or misrepresentation in connection the execution of the Note Agreement, and whether the Note Agreement has been amended, revised, or discharged.  *See MLP U.S.A., Inc. v. Motheral,* No. 05 Civ. 10796(LLS), 2006 WL 2389348, at *2 (S.D.N.Y. Aug. 17, 2006) (holding that fraudulent inducement defense gave rise to triable issue of fact that precluded summary judgment); *Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 402 (S.D.N.Y. 2000) (holding that dispute over validity of signature on guaranty raised triable issue of fact that precluded summary judgment).  Information regarding the payments made by Defendants and the parties' stipulated payment schedule is necessary in order to determine whether there is a triable issue of fact with respect to PDVSA's alleged non-payment under the Note Agreement. *See Gen. Ins. Co. of Am. v. K. Capolino Const. Corp.*, 903 F. Supp. 623, 627 (S.D.N.Y. 1995) (holding that defendant's contention that it paid plaintiff all amounts due was issue of fact that precluded summary judgment to plaintiff).  Information regarding the receipt of the Notice of Default and Notice of Acceleration, and any response by PDVSA or Petróleo, is also necessary to determine the validity of Dresser-Rand's alleged entitlement to accelerate the entire loan amount, pursuant to the terms of the Note Agreement.  *See Israel v. Chabra*, 537 F.3d 86, 94 (2d Cir. 2008) (holding that notice requirement was condition precedent to enforcement of guaranty); *Cavendish Traders. Ltd.*, 117 F. Supp. 2d at 399 ("In the context of a promissory note, under

---

[7] "In cases involving notes and guarantees, an 'obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and defendant's failure to pay.'"  *Bank of Am., Nat'l Ass'n v. Wm. V. Schmidt Co., Inc.*, No. 10 Civ. 4926(NRB), 2011 WL 1334844 (S.D.N.Y. March 25, 2011) (quoting *WestRM-West Risk Mkts. v. Lumbermens Mut. Cas. Co.*, 314 F. Supp. 2d 229, 232 (S.D.N.Y. 2004) (additional citations omitted))).

New York law, 'a plaintiff must provide proof of the valid note and of defendant's failure, *despite proper demand*, to make payment.'" (emphasis added)).

Contrary to Dresser-Rand's assertion, Defendants have not waived all defenses. Although Petróleo, as guarantor, waived *certain* defenses (and only to the extent permitted by law) in Section 6.04 of the Note Agreement, that provision expressly excludes "payment in full" as a waived defense, and only applies to Petróleo, as guarantor, but not to PDVSA, as issuer. (Scherzer Aff. Ex. A at § 6.04.)  The only other provision cited by Dresser-Rand to support its failed waiver argument is Article VII, which provides that in the event that PDVSA or Petróleo fails to pay any required amount when due, after five days written notice, Dresser-Rand may then "declare the Notes then outstanding to be forthwith due and payable . . . without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Issuer and the Guarantor, anything contained herein or in any other Finance Document to the contrary notwithstanding."  (*Id.* Ex. A at Art. VII.)  PDVSA has not waived any other defenses.

**C.    Defendants are Currently Powerless to Obtain Access to the Relevant Facts.**

Although the Maduro regime has barred President Guaidó from access to the vast majority of the government's operations and facilities, President Guaidó has taken certain steps that are within his control in order to protect the interests of the Venezuelan people.  (Hernández Decl. ¶ 8.)  These steps have been principally limited to efforts to protect the assets of the Republic outside of Venezuela.[8]  (*Id.*)   Given that oil production and sales constitute the

---

[8] In addition to its operations in Venezuela, which are controlled by the Maduro regime, PDVSA owns, through subsidiaries, certain assets and operations outside of Venezuela, including PDVSA's ownership, through its Delaware subsidiary PDV Holdings, Inc., of Citgo Petroleum Corporation ("Citgo"), a refiner, transporter, and marketer of fuel.  (Hernández Decl. ¶ 9.)

Republic's largest industry, and the source of virtually all of its foreign currency, President Guaidó has taken measures to protect and preserve those assets.  (*Id.*)

To that end, on February 12, 2019, President Guaidó and the National Assembly appointed an "ad hoc" board of directors of PDVSA, pursuant to the authority granted in Articles 15.a and 34 of the Transition Statute.  (*Id.* ¶ 10.)  Later, on April 10, 2019, the interim president expanded the size and scope of authority of the "ad-hoc" board.  (*Id.*)  In that vein, the "ad-hoc" board, with the previous approval of the National Assembly, authorized the payment of interest on PDVSA bonds secured by the shares of Citgo in order to preserve PDVSA assets for the Venezuelan people.  (*Id.*)

However, the fact that the "ad hoc" board, and President Guaidó, have been making efforts to preserve assets *outside* of Venezuela does not mean that they have total control *within* Venezuela.  (*Id.* ¶ 11.)  Indeed, the Maduro-controlled Supreme Court has purported to strip President Guaidó of the immunity from prosecution that members of the National Assembly possess under Venezuelan law, exposing him to arrest and/or prosecution for acts taken in Venezuela.  (*Id.*)  To date, the "ad hoc" board does not have access to the documents, records, and personnel of PDVSA that are relevant to Dresser-Rand's claims in this action, which all remain in Venezuela in the exclusive control of the illegitimate Maduro regime.  (*Id.*)

For all of the foregoing reasons, and those further detailed in the Hernández Declaration, this Court should grant Defendants' motion for relief under Rule 56(d).

## II.  THE COURT SHOULD DENY OR DEFER CONSIDERATION OF DRESSER-RAND'S MOTION FOR SUMMARY JUDGMENT AND STAY ALL PROCEEDINGS UNTIL DEFENDANTS CAN ACCESS THE DOCUMENTS AND PERSONNEL NECESSARY TO RESPOND TO DRESSER-RAND'S CLAIMS.

Pursuant to its authority under Rule 56(d), this Court should deny or defer Dresser-Rand's motion for summary judgment and stay all proceedings until Defendants are able to

access the evidence that they need to evaluate the claims asserted by Dresser-Rand and oppose its motion for summary judgment.  *See* Fed. R. Civ. P. 56(d) (empowering court to "defer considering the motion or deny it . . . or issue any other appropriate order.").  It is well-settled that summary judgment should be denied or deferred "where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition."  *Delphi-Delco Elec. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp. 2d 403, 417-18 (S.D.N.Y. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  Here, Defendants not only have been deprived of the opportunity to discover information that is essential to their opposition, but they currently do not have *access* to such information, which remains in the control of the illegitimate Maduro government.  (Hernández Decl. ¶¶ 12-13.)  Accordingly, this Court should stay all proceedings until the government transition is complete and Defendants are able to access the evidence that they need to evaluate Dresser-Rand's claims and oppose its motion.[9]

The Court's decision in *American Home Assurance Co. v. Zim Jamaica*, 418 F. Supp. 2d 537 (S.D.N.Y. 2006), is instructive.  In that case, the Court stayed the plaintiff's motion for summary judgment to allow the defendants to locate and depose a material witness, who the parties had been unable to find.  *See id.* at 552.  In granting the stay, the Court explained that "[g]iven the significance of his role in the [dispute at issue], his deposition invariably would bear some fruit in furtherance of defendants' case and therefore could alter significantly the Court's

---

[9]  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes of its own docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936) (citations omitted).  "Courts considering stay applications must 'exercise [their] judgment' and 'weigh competing interests.'"  *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013) (citation omitted).  Courts in this Circuit consider five factors when deciding whether a stay is warranted: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 87 F. Supp. 3d 463, 471 (S.D.N.Y. 2015) (citations omitted).  "In analyzing these factors on a case-by-case basis, 'the basic goal is to avoid prejudice.'"  *Delgado v. NJ Transit Rail Operations, Inc.*, No. 1:18-cv-02079 (SDA), 2019 WL 697289, at *1 (S.D.N.Y. Feb. 20, 2019) (citation omitted).

review of plaintiff's motion." *Id.* It also noted that its "holding is further supported by the fact that plaintiff and the Court will not be prejudiced if [the missing witness] is not found in a reasonable amount of time." *Id.*

### A.   Defendants Will Be Significantly Prejudiced if a Stay is Not Granted.

A stay of all proceedings is necessary until the Guaidó government completes its transition into power. As previously explained, although the Guaidó government is the sole government recognized by the United States, it does not have full access to the personnel and documents of the government and its instrumentalities, including Defendants. (Hernandez Decl. ¶¶ 12-13.) A stay of all proceedings will ensure that Defendants have access to all information necessary to defend themselves on the merits and to respond to the allegations of Dresser-Rand, as due process requires. *See Brown v. Ashcroft*, 360 F.3d 346, 350 (2d Cir. 2004) ("At the core of due process is the right to notice of the nature of the charges and a meaningful opportunity to be heard." (internal quotation marks and citation omitted)); *Kigin v. State of N.Y. Workers' Comp. Bd.*, 24 N.Y.3d 459, 469, 999 N.Y.S.2d 800, 806 (N.Y. 2014) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))).

### B.   In Light of the Sanctions Imposed by OFAC on PDVSA, Plaintiff Will Not Be Prejudiced By the Requested Stay.

The prejudice to Defendants if a stay is not granted and Defendants are forced to defend themselves without access to any of the relevant documents or information outweighs Dresser-Rand's interest in expediently pursuing its claim and proceeding to judgment. As further explained below, even if Dresser-Rand obtained a judgment against Defendants, at the present time, Dresser-Rand would not be able to enforce that judgment without first obtaining OFAC authorization.

On January 28, 2019, OFAC designated PDVSA as a Specially Designated National and Blocked Person ("SDN") pursuant to Executive Order 13850 ("EO 13850") for operating in the oil sector of the Venezuelan economy.  (Dukic Decl. ¶ 4.)[10]  As a result of OFAC's designation of PDVSA[11] as an SDN, all PDVSA property and interests in property[12] that are in the United States or that come within the United States or under the possession or control of any U.S. persons are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in without authorization from OFAC.  (*Id.* ¶ 5.)   Under OFAC's regulations and applicable executive orders, Dresser-Rand and Defendants are not prohibited from pursuing the above-captioned action before this Court and *obtaining* a judgment against PDVSA and Petróleo.  (*Id.* ¶ 13.)   However, neither Dresser-Rand nor Defendants are permitted to enter into a settlement agreement or enforce any judgment or other order through execution, garnishment, or other judicial process that would transfer or otherwise alter or affect PDVSA's property or interests in property without first obtaining a specific license from OFAC, as set forth in 31 C.F.R. § 591.506(c).  (*Id.*)

In light of these OFAC restrictions, any prejudice to Dresser-Rand if a stay is granted will be minimal.  Although Dresser-Rand has an interest in pursuing its claim without undue delay, even if Dresser-Rand obtained a judgment against Defendants, Dresser-Rand would be precluded from enforcing that judgment without OFAC authorization.

---

[10] "Dukic Decl." refers to the Declaration of Aleksandar Dukic in Support of Defendants' Motion for Relief Pursuant to Fed. R. Civ. P. 56(d), dated June 3, 2019, submitted herewith.

[11] Although Petróleo was not specifically designated as an SDN on January 28, 2019, it is subject to the same sanctions applicable to PDVSA as a subsidiary, pursuant to 31 C.F.R. § 591.406.  (Dukic Decl. ¶ 7.)

[12] Section 591.309 of OFAC's Venezuela sanctions regulations defines the terms "property" and "property interest" very broadly to include, inter alia, money, checks, bank deposits, debts, indebtedness, obligations, liens or other rights in the nature of security, letters of credit and any documents relating to any rights or obligations thereunder, vendors' sales agreements, negotiable instruments, accounts payable, judgments, and contracts of any nature whatsoever, among other types of tangible and intangible property.  (Dukic Decl. ¶ 6.)

### C.      The Requested Stay Will Likely Avoid Greater Delays in the Long Run.

While the requested stay will involve an initial delay of the matter, it is likely that granting the stay will avoid even greater delays.  Should Defendants be forced to respond to the allegations without access to the relevant facts and personnel, there are likely to be even greater delays in the resolution of this matter.  Defendants would be required, for example, to seek discovery from not only Dresser-Rand, but also from the Maduro government.  Obtaining such discovery, even if it could be accomplished, would likely require issuance of Letters of Request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters; submission to the Venezuela Central Authority; and issuance of an order requiring discovery, a lengthy and complex process.  Even if discovery were ordered, it would not necessarily provide adequate information and, in any event, is no substitute for the right of a party to access its own personnel and documents.  By contrast, once the Guaidó government fully transitions to power, this matter will proceed expeditiously, saving significant time and effort.  *See Rosenfeld v. Hartford Fire Ins. Co.*, No. 88 Civ. 2153(MJL), 1988 WL 49065, at *2 (S.D.N.Y. May 12, 1988) (staying case pending MDL panel's decision because, "[w]hile [plaintiffs] may suffer some initial delay, once the cases are coordinated . . . more time may well be saved than was lost.").

### D.      The Unparalleled Collapse of Venezuela and Claim Restructuring Process.

Venezuela is collapsing amidst an unparalleled complex humanitarian crisis. The gross domestic product has fallen by over fifty percent.

> That is double the size of the U.S. Great Depression. It's double the size of the Greek crisis. It's double the size of the economic collapse that occurred during the Spanish Civil War. It is something of really unique proportions. The consequence of that collapse is expressed in the fact that the minimum wage today is $6 a month. That means that the minimum wage does not buy two eggs a day. It buys something like 700 calories a day. It means that because you don't have the calories and the proteins and the medicines for 30 million people, people are

14

losing weight. This has been measured at something like eight kilos a year on average — there is in that the stunting of children's growth.[13]

This collapse has trigged a massive migration crisis. According to the General-Secretary of the Organization of American States, Mr. Luis Almagro: "with more than 3.4 million, Venezuelans are the second largest refugee population in the world, second only to Syria, which has been at war for 7 years. And the forecasts indicate that by the end of 2019 the exodus will reach 5.4 million people."[14]

In order to address the humanitarian crisis, President Guaidó also must address the economic crisis in Venezuela. In that regard, President Guaidó recently retained veteran debt restructuring lawyer, Mr. Lee Buchheit, on a pro bono basis, to help restructure claims against the Republic and the public sector dating from the Chavez/Maduro period. (Hernández Decl. ¶ 15.) This plan will address all of the external debt of, and claims against, the Republic and its instrumentalities, including PDVSA and Petróleo. (*Id.* ¶ 16.) Mr. Buchheit's plan is being prepared in conjunction with the Guaidó government's discussions with the United States government, which has expressed interest in assisting the Guaidó administration in addressing these issues. (*Id.*)

The Guaidó administration and the National Assembly need time to complete the plan before addressing individual claims, including the claims of Dresser-Rand asserted in this action. (*Id.* ¶ 17.) Based on the unprecedented financial and humanitarian crisis in Venezuela, the Guaidó government should be given time to address its claims in a global manner that best serves the interests of the Venezuelan people. For this additional reason, a stay should be granted.

---

[13] "Understanding Venezuela's collapse," The Harvard Gazette (Feb. 12, 2019), available at https://news.harvard.edu/gazette/story/2019/02/harvard-expert-tries-to-make-sense-of-venezuelas-collapse.

[14] Organization of American States, Press Release, OAS Report on Venezuelan Migrants and Refugees: "An Unprecedented Crisis in the Region" (Mar. 8, 2019), available at https://www.oas.org/en/media_center/press_release.asp?sCodigo=E-009/19.

E. **Numerous Other Courts Have Recently Granted Stays in Other Litigation Involving Venezuelan-Owned Companies.**

Other lawsuits in which Venezuelan-owned companies are parties are facing similar issues. Within the past three months, courts have granted both plaintiffs' and defendants' motions to stay in cases in which the defendants are subject to the same political change in Venezuela. *See, e.g.*, *Red Tree Investments, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, No. 19-cv-2519, ECF No. 33 (S.D.N.Y. May 6, 2019) ("Given the current political environment in Venezuela, the Court credits Defendants assertion that they 'are not in a position to provide their counsel sufficient information to respond to the allegations. . . in this action, or obtain the necessary documents and testimony required to defend the merits of the case.' The judicial interest in favor of resolving cases on their merits also weighs in favor of granting a stay."); *Comparelli v. Republica Bolivariana de Venezuela*, No. 14-cv-24414, ECF No. 168 (S.D. Fla. May 9, 2019) (granting defendants' motion to stay due to current events in Venezuela and ordering that "all judicial proceedings in this matter are STAYED until further notice of the Court"); *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, S.A.*, No. 11-CV-01735, ECF No. 133 (D.D.C. Feb. 15, 2019) (granting motion by plaintiff for indefinite stay of proceedings); *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044, Dkt. No. 1773506 (D.C. Cir. Feb. 14, 2019) (granting motion by defendant for 120-day stay of proceedings); *see also White Beech SNC, LLC v. Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A.*, No. 18-cv-4148, ECF No. 33 (S.D.N.Y. Feb. 6, 2019) (staying proceedings while plaintiff seeks OFAC guidance).

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' motion for relief pursuant to Rule 56(d) in its entirety and enter an order denying or deferring consideration of Dresser-Rand's motion for summary judgment, staying all proceedings, and granting such other and further relief to Defendants as it deems just and proper.

New York, New York
June 3, 2019

Respectfully submitted,

By:  /s/ Dennis H. Tracey, III
Dennis H. Tracey, III
Robin L. Muir
Hogan Lovells US LLP
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A*

17