UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRESSER-RAND COMPANY, | |
| Plaintiff, | |
| -against- | Docket No.: 1:19-cv-002689-LLS |
| PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO, S.A., | |
| Defendants. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR RELEIF PURSUANT TO FED. R. CIV. P. 56(d)

HOGAN LOVELLS US LLP
  Dennis H. Tracey, III
  Robin L. Muir
390 Madison Avenue
New York, New York 10017
Tel: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
robin.muir@hoganlovells.com

*Counsel for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A*

Defendants [1] respectfully submit this reply memorandum in further support of their motion, pursuant to Fed. R. Civ. P. 56(d), for an order denying or deferring consideration of Dresser-Rand's motion for summary judgment and staying all proceedings.

## ARGUMENT IN REPLY

As explained in Defendants' Opening Brief, relief under Rule 56(d) is warranted while the Venezuelan government is transitioning from the illegitimate and unrecognized Nicolás Maduro regime to the newly-installed government of Juan Guaidó.  The Guaidó government – which is the only legitimate government of Venezuela and the only government authorized to respond to the claims against Defendants – does not yet have full access to the personnel and documents of the government and its instrumentalities.  The illegitimate Maduro regime has unlawfully maintained substantial control of the operation of the Venezuelan government and government owned entities, including PDVSA and Petróleo in Venezuela.  Despite its efforts, the Guaidó government currently is unable to access the documents, records, and personnel of PDVSA and Petróleo that are necessary to demonstrate the existence of a triable issue of material fact with respect to Dresser-Rand's claims.

It is important to clarify that Interim President Guaidó, by Presidential Decree N° 3 dated April 10, 2019, appointed an ad-hoc administrative board with the authority to represent PDVSA and Petróleo regarding its assets *abroad*.  The ad-hoc board exercises the legal representation of PDVSA and Petróleo in countries that, like the United States, has recognized Juan Guaidó as Interim President.  However, the ad-hoc board does not have any control over PDVSA and

---

[1] Defendants adopt herein the same terms defined in their opening "Memorandum of Law in Support of Defendants' Motion for Relief Pursuant to Fed. R. Civ. P. 56(d)," dated June 3, 2019 (ECF No. 18) ("Opening Brief").

1

Petróleo's actions in Venezuela.  This is why it is not possible to access to any information related to Dresser-Rand's claims.

Defendants submitted the Hernández Declaration to establish their entitlement to relief under Rule 56(d).  The Hernández Declaration identified the facts sought, explained that the Guaidó regime will be able to access the documents and records containing those facts once it obtains full control over PDVSA and Petróleo as the Guaidó regime continues to transition into power, and explained how those facts are reasonably expected to create a genuine issue of material fact, what efforts the Guaidó government has made to obtain those facts, and why those efforts were unsuccessful – each of the elements required for Rule 56(d) relief.  (Hernandez Decl. ¶¶ 6-13.)

Dresser-Rand's response to this serious issue is to attempt to brush it off as a case of "alleged internal discord."  (Opposition 14.)  But that is far from accurate.  We agree that an internal disagreement within an organization would not normally justify Rule 56(d) relief.  But this case presents the unprecedented situation in which Juan Guaidó, who is the *only* party who can appear in this Court to represent the Defendants, cannot access the personnel or documents necessary to defend the case.  Not one of the cases cited by Dresser-Rand involves facts even remotely similar.

With the Hernández Declaration, Defendants demonstrated that the Guaidó government cannot access *any* documents, electronic records, or personnel of PDVSA or Petróleo, which remain in control of the Maduro regime.  (Hernández Decl. ¶¶ 7, 12.)  Specifically, Hernández explained that the Guaidó government currently is unable to confer with the individuals who were purportedly involved in the negotiation or execution of the Note Agreement upon which Dresser-Rand bases its claims.  (*Id.* ¶ 13.)  It is also unable to review the files relating to the Note

Agreement, the parties' stipulated payment schedule, or any related payments or correspondence. (*Id.*)   The Guaidó government and the ad-hoc board will be able to access these documents, records, and personnel once it obtains full control over PDVSA and Petróleo as Guaidó continues to transition into power.  (*Id.* ¶¶ 17-16.)

Dresser-Rand argues, in effect, that there is no document or testimony that can refute its allegations.  But Defendants demonstrated in the Hernández Declaration that, as in any contract case, Defendants have defenses available to them, and are entitled to access the information and documents that would show whether such defenses are valid.   Information regarding the negotiation and execution of the Note Agreement and any subsequent modifications, for example, is relevant to whether the Note was entered into with proper authority, whether there was fraud or misrepresentation in connection the execution of the Note Agreement, and whether the Note Agreement has been amended, revised, or discharged.  (Opening Brief 13; Hernández Decl. ¶¶ 7, 13.)   Information regarding the payments made by Defendants and the parties' stipulated payment schedule is relevant to whether there is a triable issue of fact with respect to PDVSA's alleged non-payment under the Note Agreement.  (Opening Brief 13; Hernández Decl. ¶ 13.)

*In re Ampal-American Israel Corp.*, No. 12-13689 (SMB), 2015 WL 5176395 (Bankr. S.D.N.Y. Sept. 2, 2015), a case cited by Dresser-Rand as "instructive," is plainly distinguishable from the circumstances here.  In that case, in support of their request to forestall consideration of the plaintiff's summary judgment motion, the defendants submitted a declaration from their attorney, stating "that the Defendants were entitled to take discovery of 'statements to the press, how those statements were reported, what, if anything [the plaintiff] did to try to curtail such conduct, and the impact such conduct had on the Project.'"  *Id.* at *13.  In denying their request, the court stated, not surprisingly, that such matters were irrelevant to the note at issue.  *Id.* at *14.

3

Here, in contrast, as established by the Hernández Declaration, Defendants seek access to the documents and records of PDVSA and Petróleo and personnel with knowledge of the Note Agreement with Dresser-Rand, which are plainly material to the instant dispute with Dresser-Rand and likely to elicit evidence to support Defendants' potential defenses.

Dresser-Rand further argues that PDVSA failed to assert any defenses during the last two years.  (Opposition 10.)  To the extent that Dresser-Rand has asserted these facts to support its claims, it raises a factual issue as to which PDVSA is entitled to discovery.  *See Continental Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 127 (S.D.N.Y. 2013) (granting Rule 56(d) motion to defendant who had no opportunity to conduct discovery).

Dresser-Rand further argues that relief under Rule 56(d) is not warranted because "Defendants' purported inability to obtain documents and information necessary to oppose summary judgment . . . stems from Defendants' own alleged internal discord and not from any actions by Plaintiff or third parties."  (Opposition 20.)  This argument fails for several reasons.

As a preliminary matter, Dresser-Rand grossly understates and oversimplifies the magnitude and complexity of the conflict in Venezuela and the complex humanitarian emergency that has resulted.  Defendants' inability to access the relevant evidence is the result of the illegitimate Maduro regime's unlawful usurpation of the Venezuelan government, not simply "Defendants' *own alleged internal discord*," as Dresser-Rand asserts.  (Opposition 14 (emphasis added).)  The Guaidó government – the only government recognized by the United States – has been unable to access to PDVSA's documents and personnel because they remain in the control of the Maduro regime.  (Hernández Decl. ¶¶ 6-7.)  Maduro has barred President Guaidó from accessing the vast majority of the government's operations and facilities, including PDVSA and Petróleo.  (*Id.* ¶¶ 12-13.)

To be sure, Rule 56(d) is applied most commonly in cases where a party requires access to documents or information in the possession of *other parties*. But Rule 56(d) is, if anything, even more appropriate where, as here, a party cannot even access its own documents and personnel. Dresser-Rand does not cite a single case to support its contention that Rule 56(d) is inapplicable in the unique circumstances of this case, where the relevant documents and information are inaccessible because they are in the possession of an unlawful and illegitimate government, and when Defendants have had *no* opportunity to seek discovery from Dresser-Rand. Indeed, such a holding would belie the purpose of Rule 56(d): to prevent the premature grant of summary judgment against parties who have not had a reasonable opportunity to prepare their case and discover evidence to combat summary judgment. *See Tarutis v. Wal-Mart Stores, Inc.*, No. C12-5076 RJB, 2013 WL 247710 (W.D. Wash. Jan. 23, 2013) ("The primary purpose of Rule 56(d) is to ensure that parties have a reasonable opportunity to prepare their case and to ensure against a premature grant of summary judgment."); *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002) ("Rule 56[d] 'provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" (citation omitted)); *United States ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) ("The purpose of Rule 56[d] is to 'provide an additional safeguard against an improvident or premature grant of summary judgment.'" (citation omitted)); *Wichita Falls Office Associates v. Banc One Corp.*, 978 F.2d 915, 920 (5th Cir. 1992) ("The purpose of Rule 56[d] is to provide non-movants with a much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion.").

Furthermore, to enter judgment against Defendants, without access to the information necessary to defend themselves on the merits, would be a clear violation of due process. *See*

5

*Condit v. Dunne*, 225 F.R.D. 100, 109 (S.D.N.Y. 2004) ("To deny defendant access to any information that may support a defense of substantial truth would deny defendant his right to due process.").  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Kigin v. State of N.Y. Workers' Comp. Bd.*, 24 N.Y.3d 459, 469, 999 N.Y.S.2d 800, 806 (N.Y. 2014) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

In a meritless attempt to refute Defendants' lack of access, Dresser-Rand argues that the Guaidó government has sufficient access to PDVSA's documents and information because it made payments on PDVSA 2020 bonds.  (Opposition 15-16.)  But the payments related to *public debt* whose terms and conditions are fully available to the general public.  Particularly considering that the Venezuelan Congress had access to such terms and conditions in 2016, when the PDVSA 2020 bonds were issued.  That does not mean that Defendants have access to any information about the private notes, individually negotiated and documented, such as the Dresser-Rand note at issue here.  The record is undisputed that the Guaidó government has no access to the documents, records, and personnel of PDVSA in Venezuela that are relevant to Dresser-Rand's claims in this action.  (Hernández ¶¶ 11-13.)  Indeed, Dresser-Rand does not even attempt to make that argument, and relies solely on inadmissible newspaper articles irrelevant to the issues in this case.  *See C.G. ex rel. B.G. v. N.Y.C. Dep't of Educ.*, 752 F. Supp. 2d 355, 360-61 (S.D.N.Y. 2010) ("The only evidence on the record is a newspaper article and an affidavit not based on personal knowledge [which are b]oth are blatantly inadmissible hearsay when used to prove the truth of  the matters referenced." (citations omitted)); *Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) ("Newspaper articles offered for the truth of the matter asserted are inadmissible hearsay." (citations omitted)).

Accordingly, all statements in the Hernández Declaration – including, but not limited to, those attesting to the Guaidó government's lack of access to the documents and personnel of PDVSA and Petróleo – are undisputed and are entitled to a presumption of truth.  *See Columbia Gas Transmission Corp. v. Perry*, 623 F. Supp. 2d 409, 414, n.2 (S.D.N.Y. 2008) ("The Court will construe as true all facts in plaintiff's statement that are not contradicted by other facts asserted by defendants in their statement."); *Paine Webber Real Estate Securities, Inc. v. D.G. Meyer & Co.*, 835 F. Supp. 116, 119 (S.D.N.Y. 1993) (assuming facts to be true on summary judgment motion when plaintiff did not provide evidence to contradict those facts).

Dresser-Rand further argues that even if Defendants satisfied their burden for Rule 56(d) relief – which they did – this Court should nonetheless grant Dresser-Rand summary judgment because "Petróleo 'unconditionally' and 'absolutely' waived all defenses."  (Opposition 24.) Dresser-Rand, again, is wrong.

As explained in Defendants' Opening Brief, and conceded by Dresser-Rand, although Petróleo, as guarantor, waived *certain* defenses (and only to the extent permitted by law), the waiver provision expressly excludes "payment in full" as a waived defense.  (Scherzer Aff. Ex. A at § 6.04.)  Moreover, Petróleo's guaranty covers "prompt payment *when due*."  (*Id.* at § 6.01 (emphasis added).)  Thus, contrary to Dresser-Rand's assertion, triable issues of material fact may exist with respect to the parties' stipulated payment schedule, and any modifications thereto, and the payments actually made.  Petróleo should have the opportunity to investigate and conduct discovery on these issues.

Furthermore, Petróleo did not waive fraud in the inducement as a defense.  Courts in this District, including this Court, have repeatedly held that even a broad disclaimer clause does not bar fraudulent inducement as a defense.  *See, e.g., MLP U.S.A., Inc. v. Motheral*, No. 05 CIV.

10796 (LLS), 2006 WL 2389348, at *2 (S.D.N.Y. Aug. 17, 2006) (guarantor's waiver of all defenses did not cover fraudulent concealment defense); *JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F. Supp. 2d 24, 27 (S.D.N.Y. 2002) (broad disclaimer clause did not bar fraudulent concealment claim); *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (finding that district court had erred in ruling that "the fact that his guarantee stated that it was 'absolute and unconditional' precluded his claims of fraudulent inducement").

This Court's decision in *MLP U.S.A., Inc. v. Motheral* is instructive.  In denying the plaintiff's motion for summary judgment, this Court rejected the plaintiff's argument that "the factual issues about [allegedly fraudulent] inducement are immaterial because the guaranty waived all defenses and was by its terms valid and unconditionally binding 'in any event and under all circumstances.'"  *MLP*, 2006 WL 2389348, at *1.

> The guaranty's waiver of all defenses "which might constitute a legal or equitable discharge of a surety or guarantor" and agreement that its guarantee of the obligor's payment and performance "shall be valid and unconditionally binding upon Guarantor in any event and under all circumstances" does not render immaterial the defense that those words-and the whole Guaranty itself-were procured by fraudulent concealment of plaintiff's knowledge of the defective nature of the equipment.

*Id.* at *2.

Thus, contrary to Dresser-Rand's assertion, triable issues of material fact may exist with respect to the execution of the Note Agreement and whether it was procured through fraud. Petróleo should have the opportunity to investigate and conduct discovery on these issues, as well.

Lastly, in opposing Defendants' request for a stay of all proceedings, Dresser-Rand argues that a stay is not warranted because the OFAC does not prohibit the Court from entering a judgment against Defendants.  (Opposition 26-28.)  This argument is a red herring.  When

determining whether a stay is warranted, "the basic goal is to avoid prejudice."  *Delgado v. NJ Transit Rail Operations, Inc.*, No. 1:18-cv-02079 (SDA), 2019 WL 697289, at *1 (S.D.N.Y. Feb. 20, 2019) (internal quotation marks and citation omitted).  While Dresser-Rand baldly asserts that it would be prejudiced by the delay in resolution, it fails to explain how it could possibly be prejudiced by a 120 day delay.  As explained in their Opening Brief, Defendants, on the other hand, will undeniably be prejudiced, and their due process rights compromised, if a stay is not granted.  (Opening Brief 17.)

To summarize, the motion of stay requested aim to grant PDVSA and Petróleo "a reasonable opportunity to prepare their case and to ensure against a premature grant of summary judgment."  In the current political crisis in Venezuela, and amidst an unparalleled economic collapse that triggered a complex humanitarian emergency and a massive refugees and migrants crisis, Defendants cannot prepare their case according to the due process standards.  It shall be the policy of the Interim Government of President Guaidó to seek resolution of all legacy claims against the Republic and public sector entities (as PDVSA and Petróleo) dating from the Chavez/Maduro era as promptly as possible after recovering control of the country.  For that purpose, the Interim Government and the National Assembly are committed to an orderly and cooperative resolution of the claims against Venezuelan Government (including PDVSA and Petróleo).  But the first order of business must be to address the complex humanitarian emergency.  For that purpose also, a stay is required to ensure the due process and the breathing room necessary to address the unparalleled crisis in Venezuela.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Opening Brief, this Court should grant Defendants' motion for relief pursuant to Rule 56(d) in its entirety and enter an order denying or deferring consideration of Dresser-Rand's motion for summary judgment, staying all proceedings, and granting such other and further relief to Defendants as it deems just and proper.

New York, New York
June 25, 2019

Respectfully submitted,

By:  /s/ Dennis H. Tracey, III
     Dennis H. Tracey, III
     Robin L. Muir
     Hogan Lovells US LLP
     390 Madison Avenue
     New York, New York 10017
     Tel: (212) 918-3000
     Fax: (212) 918-3100
     dennis.tracey@hoganlovells.com
     robin.muir@hoganlovells.com

     *Counsel for Defendants Petróleos de Venezuela, S.A. and PDVSA Petróleo, S.A*