

Driving progress
through partnership

**Jordan W. Siev**
Direct Phone: +1 212 205 6085
Email: jsiev@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

August 19, 2019

**Via ECF**

Hon. Louis L. Stanton
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

**Re: *Dresser-Rand Co. v. Petróleos de Venezuela, S.A., et al*, No. 19-cv-02689-LLS**

Dear Judge Stanton:

This firm represents plaintiff Dresser-Rand Company ("D-R") in the above-referenced action. We write to request a pre-motion conference for the purpose of setting a schedule to (1) complete briefing on D-R's pending motion for summary judgment (and an attendant stay on discovery requested from D-R, as discussed below), and (2) brief D-R's anticipated motion for an order enjoining defendants Petróleos de Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("PPSA," and together with PDVSA, "Defendants") from taking any action that could render any judgment in favor of D-R meaningless, to attach the Defendants' assets within the Court's jurisdiction, and/or requiring Defendants to post security during the pendency of this action, including security for costs under Local Civil Rule 54.2. D-R is concerned that the delayed resolution of D-R's claims puts the value of an eventual judgment in peril.

**A Briefing Schedule Should Be Set on D-R's Pending Summary Judgment Motion**

D-R commenced this action on February 26, 2019 via a Motion for Summary Judgment in Lieu of Complaint pursuant to CPLR § 3213 (the "Motion") in New York State Supreme Court to collect monies that Defendants indisputably owe D-R under a Note Agreement dated January 20, 2017 ("Note Agreement"). Rather than respond to the merits of D-R's Motion, Defendants requested that this Court stay this action in its entirety or defer resolution of D-R's Motion because of continuing political turmoil in Venezuela which they claimed resulted in Defendants' inability to access its own documents and personnel.

On July 3, 2019, this Court deferred consideration of D-R's Motion for 120 days so Defendants have ample time to access their own documents and/or personnel in an effort to determine whether there is any legitimate basis to oppose D-R's Motion. *See* ECF No. 32. In particular, the Court's July 3, 2019 Memorandum and Order ("July 3rd Order") credited Defendants' affidavit stating that the Guaidó regime does not have full access to Venezuela's operations, facilities, or personnel, including "the documents or electronic records of PDVSA or Petróleo," because of the Maduro regime's actions. *Id*. at 2–4. Thus, the Court gave Defendants limited additional time to locate evidence supporting any potential defenses. *See id*. at 4 ("Although PDVSA and Petróleo have not been able to offer evidence that would support any defenses (such as payment in full, a defense that Petróleo did not waive), a limited stay will allow some time to search for such evidence.").

Pursuant to the Court's Order, Defendants should submit any internal information they contend supports a viable defense by the end of the 120-day deferral period, so Plaintiff's pending motion for summary judgment can be considered promptly thereafter. *See id*. at 5 ("Consideration of the plaintiff's



motion for summary judgment is deferred for 120 days from the date of this order."). So that the Court can consider the motion on approximately October 31, 2019 (*i.e.*, 120 days after July 3, 2019), any further briefing must be completed in advance of that date.

Following on earlier emails between counsel, on August 9, 2019, counsel for D-R and Defendants engaged in a meet and confer to attempt to set a briefing schedule in connection with D-R's Motion. Defendants' counsel refused to complete briefing by October 31, 2019. Instead, Defendants expanded their earlier positions and contend they are now entitled to ***full discovery, including from D-R***, prior to responding to D-R's Motion, and that they intend to serve D-R with document requests, interrogatories and deposition notices. Document requests and interrogatories were then served by Defendants on August 13, 2019.

Defendants are wrong. The July 3rd Order permitted Defendants' counsel a limited amount of additional time to obtain information from ***their own clients*** to oppose D-R's Motion. D-R does not believe it permits full-blown discovery, as Defendants now seek. Indeed, if Defendants truly needed discovery from D-R, they could have sought it back in February when the action initially was filed. They also could have raised it in their papers or oral arguments about the purported need for a stay, but did not. This sudden, purported need for full discovery against D-R lacks credibility, is nothing more than another delay tactic, and is wholly unnecessary given the broad waiver of defenses in the Note Agreement. *See* ECF No. 1-1 at pp. 49–48; *see also id.* at p. 45, § 6.04. Thus, this discovery should be stayed.

Because Defendants appear to be attempting to circumvent this Court's July 3rd Order, D-R asks that the Court either schedule a pre-motion conference on the briefing schedule and stay of discovery noted above, or simply set a briefing schedule. Should the Court be inclined to set a schedule, D-R proposes that Defendants submit their opposition and any additional evidence by **October 10, 2019**, and D-R submits its response by **October 30, 2019**. This will allow the Court to consider D-R's Motion at the end of the 120-day period. The parties can also address the purported need for discovery from D-R in those filings in order to avoid duplicative briefing.

**Injunctive Relief is Necessary to Protect D-R's Inevitable Judgment**

Defendants requested a delay in this case on the premise that the Venezuelan government was on the precipice of transitioning power from the Maduro regime to the Guaidó regime. The transition still has not occurred. And, it remains unclear whether or when the transition will happen at all.

Meanwhile, it has been 174 days since D-R filed this accelerated action. The passage of time becomes more prejudicial each day because other creditors of Defendants—many of which similarly issued promissory notes to Defendants that went unpaid—are moving closer towards judgment or the receipt of international arbitration awards that will continue to result in the seizure of Defendants' limited assets located outside of Venezuela.

In the United States alone, on July 29, 2019, the Third Circuit upheld a decision by the Delaware District Court permitting Crystallex International Corporation, which previously obtained an arbitral award against Venezuela, to proceed with attachment of assets of PDVSA, including PDVSA's shares in the holding company for CITGO Petroleum Corp. ("CITGO").[1] *See Crystallex Int'l Corp. v. Bolivarian Republic of Venez.*, 18-CV-2797, Doc. No. 003113304271 (3rd Cir. July 29, 2019). CITGO, and its tangible assets, represent all or nearly all of PDVSA's assets located in the United States. Crystallex is in a position to seek to enforce its attachment order by seizing PDVSA's shares, which are assets that D-R

[1] Petróleos de Venezuela Holding, Inc. ("PDVH") is the holding company for CITGO.





should be entitled to attach to satisfy its inevitable judgment. Other creditors are also moving closer towards enforcement of judgments, to D-R's detriment. *See OI European Group B.V. v. Bolivarian Republic of Venez.*, 16-CV-1533, Dkt. No. 89 (D.D.C. July 25, 2019) (plaintiff, holder of an arbitral award against Venezuela, moved for leave to register a judgment obtained in May and advising the court that it intended to attach PDVSA's assets).[2] Additionally, D-R understands that several creditors are adjudicating claims against PSDVA via non-U.S. fora, and such claims have resulted or likely will also result in the seizure of PSDVA's assets.

Consequently, D-R has no choice but to seek protection for its claim via a preliminary injunction preventing Defendants from dissipating their assets, attaching Defendants' assets within the Court's jurisdiction, and/or requiring Defendants to post security during the pendency of this action. *See S.E.C. v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 438–39 (2d Cir. 1987) (affirming freeze of assets where the claims have merit and "there was a clear danger that the [debtors] would have depleted their assets substantially in the absence of a freeze); *see also* Fed. R. Civ. P. 64, 65; Local Civil Rule 54.2. Absent relief from the Court, there is a real danger that the value of the judgment eventually awarded to D-R in this case may be impaired. D-R will, of course, comply with all necessary rules and sanctions requirements before obtaining any such security.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Jordan W. Siev*

Jordan W. Siev

Cc: All Counsel of Record (*via ECF*)

[2] Further, the Guaidó regime itself has begun taking steps towards restructuring Venezuela's debt, including the debt of state entities such as PDVSA, in a manner that appears designed to prejudice D-R's creditor rights. On July 1, 2019, the Special Attorney General of the Guaidó regime issued a memorandum proposing "guidelines for the renegotiation of public debt held by Venezuela and its 'public sector,' including PDVSA" at such time as sanctions are lifted. *See Office of the Special Attorney General of the Bolivarian Republic of Venezuela*, GUIDELINES FOR THE RENEGOTIATION OF THE CHAVEZ/MADURO ERA LEGACY PUBLIC EXTERNAL DEBT, attached hereto as Exhibit A. If agreed to, the proposed guidelines would result in the appointment of a "debt reconciliation agent . . . to determine the amounts of each of [the] claims for the purposes of the renegotiation." It is by no means clear that this process will respect existing agreements and/or current or future court rulings.