**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DRESSER-RAND COMPANY,                            **No. 19-cv-02689-LLS**

       *Plaintiff,*

    v.

PETRÓLEOS DE VENEZUELA, S.A. *et al*,

     *Defendants.*


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**


REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Plaintiff*
*Dresser-Rand Company*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT…………………………………………………………………1

STATEMENT OF FACTS………………………………………………………………..4

I.      LEGAL STANDARD.........................................................................................6

II.     PLAINTIFF PROPERLY NOTIFIED DEFENDANTS OF THEIR DEFAULT ...............8

III.    PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE  FOR RECOVERY
        ON THE NOTE AGREEMENT........................................................................12

IV.     DEFENDANTS FAIL TO ESTABLISH A TRIABLE ISSUE OF MATERIAL
        FACT ...........................................................................................................16

        A.      Defendants Have Failed to Establish a Triable Issue of Material Fact With
                Respect to Their Default. .......................................................................17

        B.      Defendants Have Failed To Establish a Triable Issue of  Material Fact
                Relating to an Impossibility Defense.....................................................19

                1.      Defendants' alleged "impossibility" based on sanctions. ........................ 19

                2.      Defendants' alleged "impossibility" based on SDN designation. ............ 21

CONCLUSION…………………………………………………………………………..22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*AAI Recoveries, Inc. v. Pijuan*,
    13 F. Supp. 2d 448 (S.D.N.Y. 1998)......................................................................12

*Bank of Am., Nat'l. Ass'n v. Kamico, Inc.*,
    No. 11 Civ. 5255 MHD, 2012 WL 1449185 (S.D.N.Y. Apr. 24, 2012)................................13

*Bank of N.Y. Mellon v. Gordon*,
    171 A.D.3d 197 (2d Dep't 2019) ......................................................................15

*Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*,
    215 F.3d 219 (2d Cir. 2000)............................................................................8

*Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr.*
    *Servs. Corp.*,
    No. 12-cv-3940(DLI)(RML), 2015 WL 1443038 (E.D.N.Y. Mar. 27, 2015)........................9

*CAMOFI Master LDC v. Coll. P'ship, Inc.*,
    452 F. Supp. 2d 462 (S.D.N.Y. 2006)..................................................................7

*Contemporary Mission, Inc. v. Famous Music Corp.*,
    557 F.2d 918 (2d Cir. 1977).............................................................................10

*Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*,
    25 N.Y.3d 485 (2015) ..................................................................................11

*Cruden v. Bank of New York*,
    957 F.2d 961 (2d Cir. 1992).............................................................................17

*E. Savings Bank, FSB v. Rabito*,
    No. 11-civ-2501 (KAM), 2012 WL 3544755 (E.D.N.Y. Aug. 16, 2012) ...........................15

*ECD Inv'r Grp. v. Credit Suisse Int'l*,
    No. 14-cv-08486, 2017 WL 3708620 (S.D.N.Y. Aug. 28, 2017)..................................14

*In re Enron Corp.*,
    No. 03-92682A, 2006 WL 2400345 (Bankr. S.D.N.Y. July 27, 2006) ...........................13

*Export-Import Bank of U.S. v. Agricola Del Mar BCS*,
    536 F. Supp. 2d 345 (S.D.N.Y. 2008)..................................................................11

*Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*,
    No. 03-8554 (DCP) 2008 WL 465169 (S.D.N.Y. Feb. 6, 2008) ................................11

*Galasso v. Eisman, Zucker, Klein & Ruttenberg*,
    310 F. Supp. 2d 569 (S.D.N.Y. 2004)..................................................................17

*Gustavia Home, LLC v. Bent*,
    321 F. Supp. 3d 409 (E.D.N.Y. 2018) ..................................................................13

*Health–Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990)...............................................................................20

*Howard v. City of New York*,
    No. 12 Civ. 0933(JMF)(JCF), 2013 WL 6925088, at *9–10 (S.D.N.Y. July 3, 2013) ..........14

*ICBC (London) PLC v. Blacksands Pacific Grp., Inc.*,
    No. 15 Civ. 0070(LAK), 2015 WL 5710947 (S.D.N.Y. Sept. 29, 2015) ............................7, 10

*Israel Discount Bank of N.Y. v. 500 Fifth Ave. Assoc.*,
    167 A.D.2d 203 (1st Dep't 1990) ......................................................................15

*Jackal Holdings LLC v. JSS Holdings Corp.*,
    814 N.Y.S.2d 561 (Sup. Ct. N.Y. Cnty. 2005) .......................................................11

*JPMorgan Chase Bank, N.A. v. Grennan*,
    175 A.D.3d 1513 (2d Dep't 2019) .....................................................................15

*Kel Kim Corp. v Central Mkts.*,
    70 N.Y.2d 900 (1987) ..............................................................................19, 20

*Mahoney v. Sony Music Ent.*,
    No. 12 Civ. 5045(RJS)(AJP), 2013 WL 491526 (S.D.N.Y. Feb. 11, 2013)...........................10

*Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*,
    No. CV-06-3951 (DGT), 2007 WL 2815741 (E.D.N.Y. Sept. 25, 2007) ............................13

*MG Refining & Mktg., Inc. v. Knight Enters., Inc.*,
    25 F. Supp. 2d 175 (S.D.N.Y. 1998)....................................................................22

*Miller v. Steloff*,
    686 F. Supp. 91 (S.D.N.Y. 1988).......................................................................15

*MyPlayCity, Inc. v. Conduit Ltd.*,
    No. 10-cv-1615, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012)......................................9

*Nat'l Iranian Oil Co. v. Ashland Oil Inc.*,
    817 F.2d 326 (5th Cir. 1987) ..........................................................................22

*Nat'l Union Fire Ins. Co. v. Keenan*,
    No. 93 Civ. 6784(LLS), 2005 WL 736233 (S.D.N.Y. Mar. 31, 2005)................................7

*Pace v. Air & Liquid Sys. Corp.*,
    171 F. Supp. 3d 254 (S.D.N.Y. 2016)..................................................................15

*Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*,
No. 95 CIV. 5575 (KMW), 1996 WL 340002 (S.D.N.Y. June 19, 2006)..............................10

*Quinones v. City of New York*,
No. 16-cv-0985 (GBD) (DF), 2018 WL 4658799 at *2 (S.D.N.Y. July 13, 2018)................14

*R.B. Ventures, Ltd. v. Shane*,
112 F.3d 54 (2d Cir. 1997)......................................................................................................18

*RBFC One, LLC v. Zeeks, Inc.*,
367 F. Supp. 2d 604 (S.D.N.Y. 2005).....................................................................................10

*Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A.*,
No. 94-cv-8390 (SAS), 1995 WL 714349 (S.D.N.Y. Dec. 5, 1995).......................................11

*Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*,
339 F. Supp. 2d 425 (N.D.N.Y. 2004).....................................................................................10

*Scanlan v. Devon Sys., Inc.*,
No. 89-cv-1634 (LMM), 2000 WL 218389 (S.D.N.Y. Feb. 24, 2000) ...................................21

*Searles v. First Fortis Life Ins. Co.*,
98 F. Supp. 2d 456 (S.D.N.Y. 2000)........................................................................................14

*Suarez v. Ingalls*,
282 A.D.2d 599 (2d Dep't 2001) ...............................................................................................9

*Tabatznik v. Turner*,
No. 14-cv-8135 (JFK), 2016 WL 1267792 (S.D.N.Y. Mar. 30, 2016) ....................................7

*Thor 725 8th Ave, LLC v. Goonetilleke*,
138 F. Supp. 3d 497 (S.D.N.Y. 2015)......................................................................................10

*Toure v. Central Parking Sys. of New York*,
2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) .................................................................9

*U.S. v. Int'l Bhd. of Teamsters*,
816 F. Supp. 864 (S.D.N.Y. 1992)..........................................................................................20

*U.S. v. Milgram*,
No. 14-cv-1735, 2015 WL 4247165 (E.D.N.Y. July 13, 2015)...............................................12

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*,
No. 10 Civ. 5815(GBD), 2010 WL 5422508 (S.D.N.Y. Dec. 23, 2010)...................................7

*Vangas v. Montefiore Med. Ctr.*,
6 F. Supp. 3d 400 (S.D.N.Y. 2014)..........................................................................................10

*Wells Fargo Bank, N.A. v. Eisler*,
    118 A.D.3d 982 (2d Dep't 2014) ........................................................................................10

*Woo v. Times Enter., Inc.*,
    No. 98 Civ. 9171, 2000 WL 297114 (S.D.N.Y. Mar. 22, 2000) ..............................................8

*Wyler v. U.S.*,
    725 F.2d 156 (2d Cir. 1983)...................................................................................................17

*Zakre v. Norddeutsche Landesbank Girozentrale*,
    396 F. Supp. 2d 483 (S.D.N.Y. 2005).....................................................................................15

*ZBD Constructors, Inc. v. Billings Generation, Inc.*,
    No. 09-cv-6667, 2011 WL 1327144 (S.D.N.Y. Mar. 25, 2011).............................................21

**Rules**

Fed. R. Civ. P. 56 .......................................................................................................................7, 15

N.Y. C.P.L.R. § 3213 ..................................................................................................................6, 15

**Other Authorities**

Sarah Kinosian, *Maduro Says 'thank God' for Dollarization in Venezuela*,
    REUTERS (Nov. 17, 2019, 3:10 PM) ........................................................................................21

Saeleha Mohsin, *Trump Slaps De-Facto Oil Ban on Venezuela*, BLOOMBERG (Jan.
    28, 2019 3:30 PM), https://www.bloomberg.com/news/articles/2019-01-
    28/trump-sanctions-venezuela-oil-company-pdvsa-rubio-announces ....................................21

Plaintiff submits this Reply Memorandum of Law, along with the accompanying Declarations of Erik Scherzer ("Scherzer Reply Decl.") and Jordan W. Siev, ("Siev Declaration" or "Siev Decl."), each of which is dated December 23, 2019, as well as the Declaration of Anna Wilson ("Wilson Decl."), dated December 6, 2019, in further support of its Motion, pursuant to Fed. R. Civ. P. 56, for summary judgment against defendants PDVSA, as Issuer of the underlying Note, and Petróleo, as Guarantor of the underlying Note.[1]

## PRELIMINARY STATEMENT

Defendants are—and were at the time of contracting—sophisticated businesses. Defendants entered into a binding Note Agreement, benefited from it, and performed pursuant to its terms until they decided it was no longer in their interest to do so. Nothing in Defendants' amended opposition papers moots their contractual breach, demonstrates the existence of a triable issue of fact, or detracts from the reality that this case was tailor-made for resolution on summary judgment.

Despite bearing the burden of proof and having been given approximately 9,500 documents—of which they have not challenged the veracity of a single one—and with *nearly ten months* to identify a viable defense, Defendants do not—and cannot—substantively refute any of the key elements of Plaintiff's claim. Defendants do not deny the existence of a valid Note Agreement—even though they had initially set out to allege they had been fraudulently induced into accepting an approximately $120 million loan from Plaintiff on an unsecured basis (*see* ECF No. 18 at 8, ECF No. 19 ¶ 13). Moreover, Defendants concede they are in default of the Note Agreement by not being current on their payments due to Plaintiff.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in Plaintiff's Memorandum of Law in Support of their Motion for Summary Judgment in Lieu of Complaint (ECF No. 1-1 at 98) ("Moving Brief").

Rather than identifying a viable defense (because none exists) Defendants falsely accuse Plaintiff of engaging in a "pattern of secretiveness."  In reality, it is Defendants that have, from the start of this litigation, been engaging in outright gamesmanship and delay, hiding behind the veil of allegedly having "no access to their own documents."  Opp. at 1 (emphasis added).[2]

In their amended opposition, for example, Defendants rely on a single email for their claim that PDVSA made an "additional payment on January 31, 2018."  This new argument is entirely misleading, however, as documents produced by Plaintiff prove that (i) Plaintiff *never received* this alleged payment from PDVSA, and (ii) *informed* PDVSA the payment was not received, but (iii) received no response from PDVSA with respect to same.  Defendants ignore these dipositive communications in an effort to concoct a triable issue of fact and prolong a resolution of this dispute in Plaintiff's favor.

Notwithstanding Defendants' efforts to grasp at straws, the record indisputably shows Defendants have not made a single payment after July 2017, despite being required to make an *additional ten* payments in the cumulative amount of approximately $132 million (consisting of principal and interest) over a nearly *two year time period*.  Defendants further ignore the uncontested fact that Petróleo agreed to an *unconditional* guarantee and waived virtually all of its defenses, including the defense of insufficient notice on which Defendants now attempt to rely.

For example, Defendants now take the position that Plaintiff failed to send Defendants requisite notice of their default because Plaintiff misspelled the email address of one of the two notice recipients.  There is, however, no genuine dispute Plaintiff adequately, properly, and on multiple occasions notified Defendants of their default.  Most importantly, Plaintiff followed its email notice to Defendants by delivering the Notice of Default via overnight courier in

---

[2]  As used herein, "Opp." or "Opposition" refers to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Complaint (*Modified*) (ECF No. 53).

accordance with the Note Agreement.  Thus, Plaintiff provided Defendants with the notice required under the parties' agreement, and any technical issue in the transmission of the Notice of Default by email is thus irrelevant.

Defendants' evidentiary arguments and impossibility defenses do not fare any better. Defendants contend that Plaintiff has not satisfied its burden of showing entitlement to judgment as matter of law because, they claim, the initial affidavit of Erik Scherzer, dated February 26, 2019 (the "<u>Scherzer Affidavit</u>" or "<u>Scherzer Aff.</u>"), the Head of Credit and Collections of Plaintiff, is not based on personal knowledge and, thus, is inadmissible.  But, Mr. Scherzer, the very drafter and sender of the Notice of Default, unequivocally attests to being "*personally involve[d]*" with the transactions at issue, and explains the multiple, undisputed bases of his personal knowledge.  Any attempt to challenge Mr. Scherzer's personal knowledge is entirely undermined by the slew of correspondence produced by Plaintiff (and even relied on by Defendants) that plainly establishes Mr. Scherzer's personal involvement and knowledge of the underlying facts.  Moreover, the Scherzer Affidavit attaches the precise business record evidencing the existence of a valid Note and Defendants' default in respect of the same.  Thus, the Scherzer Affidavit, as well as the documents attached thereto, are each admissible and dispositive evidence, and establish Plaintiff's *prima facie* right to recovery.

Moreover, in asserting a defense of "impossibility," Defendants conveniently ignore the evidence showing that Plaintiff was ready, willing, and able to work with Defendants to overcome any sanction-imposed hurdles, including by arranging for alternative payment methods.  *See* Scherzer Reply Decl. ¶ 20, Ex. K.  Defendants, on their own volition, chose not to perform, despite having the ability and means to do so.  As such, this does not constitute a

narrow circumstance where a party's performance was objectively impossible due to no fault of their own, and Defendants remained legally obligated to make the requisite payments.

Because Defendants fail to establish any triable issue of material fact, summary judgment is appropriate, and the Court should grant Plaintiff the expedited relief to which it is entitled under Fed. R. Civ. P. 56.

<u>**STATEMENT OF FACTS**</u>

The factual background relevant to this action was presented to the Court through Plaintiff's Moving Brief and supporting affidavits and exhibits, which Plaintiff respectfully incorporates herein.  *See* ECF No. 1-1 (at page 98).  Plaintiff does not reiterate that history in full here, but instead sets forth background relevant to this Reply.

Plaintiff initiated this action on February 26, 2019, in New York state court by filing a motion for summary judgment in lieu of complaint pursuant to CPLR § 3213.  *See* ECF Nos. 1-1 & 1-2.  On March 26, 2019, Defendants removed the action to this Court.  *See* ECF No. 1.

On June 3, 2019, Defendants moved this Court, pursuant to Fed. R. Civ. P. 56(d), to deny or defer consideration of Plaintiff's Motion because Defendants allegedly could not respond to Plaintiff's claims due to a supposed lack of information resulting from Venezuela's transition of government from the Maduro regime to the Guadió regime.  *See* ECF No. 17.  The crux of Defendants' argument was that the Maduro government prevented the Guadió government from accessing documents and information relevant to this dispute.  *See id.* at 1.  While Defendants seemingly concede they have not been entirely prevented from accessing relevant information, documents, and personnel (*see id.* 6–7 "does not have *full* access" (emphasis added); *see also* ECF No. 19 ¶ 7 ("the Guadió government does not have *full* access to the Republic's operations, facilities, or personnel") (emphasis added)), Defendants nevertheless claimed they were unable to confirm or refute all of Plaintiff's allegations in the Motion.  *See id.*

On June 18, 2019, Plaintiff opposed Defendants' Rule 56(d) request.  In support, Plaintiff cited to Defendants' own statements and public news accounts, evidencing the Guadió regime's significant control over both Defendants and their information, including regarding Defendants' debt obligations.  *See* ECF No. 26 at 16.  Information obtained to date confirms the Guadió regime has been actively making payments on other outstanding PDVSA notes—payments that could only be made with access to information about Defendants' indebtedness (and payments which contravene and refute any notion of "impossibility" of payment).  *See id.*  It also showed that Defendants, through President Guadió, retained a "veteran debt restructuring lawyer" to help restructure all debt dating from Chavez/Maduro period, including the very debt of Defendants at issue herein.  *See id.* at 17 (citing ECF No. 18 at 15; ECF No. 19 ¶ 15).  Again, such debt can only be restructured with access to information about the underlying debt.  *See id.*

On July 3, 2019, the Court entered an order deferring consideration of Plaintiff's Motion for 120 days.  ECF No. 32.  The Court recognized that "[Defendants] ha[d] not been able to offer evidence that would support any defenses (such as payment in full, a defense that Petróleo did not waive)," but that "a limited stay will allow some time to search for such evidence."  *Id.* at 4.

On September 6, 2019, the Court held a conference to address Plaintiff's request for a briefing scheduling on the Motion and Defendants' discovery requests.  *See* ECF No. 33.  That same day, the Court issued a memorandum,[3] as well as an Order (ECF No. 37), instructing Plaintiff to "make available to defendants copies of all correspondence and documents *exchanged* between the parties concerning the terms and performance of the loan agreement, including any payments."  *Id.* (emphasis added).  The Court acknowledged in this case, brought pursuant to a motion for summary judgment in lieu of complaint, "defendants are not entitled to

---

[3]  The Court's September 6, 2019 memorandum is not available on the ECF docket, but, rather, was provided to counsel for the parties at the completion of the September 6th hearing.  A true and correct copy of the memorandum is attached to the Siev Decl. as Exhibit A.

employ Rule 26 discovery." Siev Decl. Ex. A at 1. It nonetheless instructed Plaintiff to produce to Defendants documents "between the borrower and lender." The purpose of Plaintiff's limited disclosure was not, as Defendants suggest, for Plaintiff to satisfy its burden of proof (as it had already met that burden by way of the Motion), but to give Defendants an opportunity to "articulate any viable defense to the claim." *Id.* at 2.

On November 18, 2019, Defendants filed their opposition to Plaintiff's Motion. *See* ECF Nos. 47–48. In part, Defendants argued that Plaintiff did not produce a copy of the Notice of Default sent to Defendants. *See* ECF No. 47 at 9–10. Following receipt of Defendants' opposition, Plaintiff undertook an additional search for further potentially responsive documents, including documents related to Defendant's allegations that the Notice of Default was never sent to Defendants. *See* Siev Decl. ¶ 5. Through this process, Plaintiff located 20 additional responsive documents, consisting of only 11 emails, which it promptly produced to Defendants the next day. *See id.* ¶¶ 5-6. In light of this supplemental production, Plaintiff offered Defendants the option to supplement and/or modify their opposition to the Motion.[4] *See id.* ¶ 7.

Yet, even with the benefit of approximately 9,500 documents, additional time, and a supplemental submission, Defendants failed to articulate a viable defense to Plaintiff's claim.

## ARGUMENT

### I.   LEGAL STANDARD

New York's CPLR § 3213 authorizes the commencement of an action "based upon an instrument for the payment of money only or upon any judgment." CPLR § 3213. Upon

---

[4] Plaintiff's counsel invited Defendants to raise any questions or issues Defendants may have with respect to the supplemental production. *See* Siev Decl. ¶ 8. On December 6, 2019, Defendants' counsel sent Plaintiff's counsel specific inquiries regarding the supplemental production, which Plaintiff's counsel responded to on December 12, 2019. *See id.* ¶¶ 8, 10. The next day, counsel for the parties engaged in a meet-and-confer, during which Defendants' counsel had the opportunity to—and, in fact, did—raised additional questions regarding the supplemental production, all of which were addressed by Plaintiff's counsel. *See id.* ¶ 11. Since then, Plaintiff has not received any additional inquiries or follow-on requests relating to its supplemental production. *See id.* ¶ 12. Defendants instead filed their amended opposition. *See id.*

removal to federal court, a CPLR § 3213 motion for summary judgment in lieu of complaint is converted to a motion for summary judgment under Fed. R. Civ. P. 56.  *See Tabatznik v. Turner*, No. 14-cv-8135 (JFK), 2016 WL 1267792, at *4 n.2 (S.D.N.Y. Mar. 30, 2016).

Under New York law, a *prima facie* case for recovery on a promissory note requires a showing of (1) proof of a valid note and (2) failure to make payment.  *CAMOFI Master LDC v. Coll. P'ship, Inc*., 452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006); *Valley Nat'l Bank v. Oxygen Unlimited, LLC*, No. 10 Civ. 5815(GBD), 2010 WL 5422508, at *3 (S.D.N.Y. Dec. 23, 2010) ("To succeed on a motion for summary judgment, a plaintiff suing on a promissory note needs to merely establish the absence of a genuine issue as to the execution and default.") (quotations omitted).  Likewise, "in an action against a guarantor, a plaintiff must show the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty."  *ICBC (London) PLC v. Blacksands Pacific Grp., Inc*., No. 15 Civ. 0070(LAK), 2015 WL 5710947, at *2 (S.D.N.Y. Sept. 29, 2015) (quotation omitted).

Where, as here, a noteholder has established a *prima facie* case, the burden shifts to the defendant to prove "the existence of a triable issue of fact in the form of a bona fide defense against the note." *Nat'l Union Fire Ins. Co. v. Keenan*, No. 93 Civ. 6784(LLS), 2005 WL 736233, at *1 (S.D.N.Y. Mar. 31, 2005) (quotation omitted).  "A stringent standard applies to evaluating a defense to a negotiable instrument among sophisticated business people." *CAMOFI*, 452 F. Supp. 2d at 471 (quotation omitted).  To establish a *bona fide* defense, a defendant "may not rely on conclusory allegations, but instead must show by admissible evidence a *genuine and substantial issue* rebutting [creditor's] entitlement to payment."  *Id.* (quotations omitted and emphasis added).  Where there is a lack of evidence supporting an essential element of a defense,

there can be no genuine issue of material fact preventing a grant of summary judgment. *Woo v. Times Enter., Inc.*, No. 98 Civ. 9171, 2000 WL 297114, at *3 (S.D.N.Y. Mar. 22, 2000).

Here, Plaintiff is entitled to summary judgment because there is no question the Note Agreement and Note are valid instruments for the payment of money, and Defendants have not made all of the required payments under the agreements. Defendants have yet to present evidence refuting either of these facts; nor have they put forth any other viable defense.

## II.   PLAINTIFF PROPERLY NOTIFIED DEFENDANTS OF THEIR DEFAULT

As set forth in Plaintiff's moving papers and herein, Plaintiff satisfied the notice obligation contained in the Note Agreement with respect to the Notice of Default. Indeed, Defendants do not—and cannot—contest they were on actual notice of their default, both prior to and after Plaintiff sent the Notice of Default on February 14, 2019. Numerous documents produced by Plaintiff confirm Defendants were on notice of their default on multiple occasions, and that Defendants conceded and recognized their default several times. *See* Siev. Decl. Exs. B–G. Despite this, Defendants now point to an alleged technicality to evade their contractual payment obligations—namely, that the Notice of Default was not sent in accordance with the terms of the Note Agreement. *See* Opp. at 6–9. Defendants are wrong as a matter of fact and of law.

First and foremost, the Notice of Default was, in fact, delivered to Defendants in the manner required under the Note Agreement. On February 14, 2019, in addition to Mr. Scherzer emailing the Notice of Default, Plaintiff sent the Notice by an additional means permitted under the Note Agreement: it sent the Notice of Default by DHL overnight courier to the notice

recipients set forth in the Note Agreement.[5]  *See* Wilson Decl. ¶¶ 4–7, Ex. B; *see also* Scherzer

Aff., Ex. A § 9.01 (notices "shall be delivered by hand or overnight courier service, or sent by

fax or electronic mail").  Defendants *signed for and acknowledged receipt* of the delivery on

February 18, 2019.  *See* Wilson Decl. ¶ 7.  Thus, there is conclusive proof that Plaintiff sent and

that Defendants received written notice of their default consistent with the Note Agreement.[6]

This fact should end the inquiry (and thus the contrived technicalities Defendants now try

to raise with respect to the emailed version of the Notice of Default are irrelevant and should be

disregarded).[7]  But, even if this Court were to consider such arguments, they should be rejected

because New York courts routinely hold "strict compliance with contract notice provisions is not

required in commercial contracts when the contracting party receives actual notice and suffers no

detriment or prejudice by the deviation."  *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-cv-1615,

2012 WL 1107648, at *10 (S.D.N.Y. Mar. 30, 2012) ("While the notice contained a

---

[5]  Defendants take the position that this Court should not consider evidence of Plaintiff's DHL delivery because it supposedly constitutes "new evidence" submitted on reply.  *See* Opp. at 8, n. 5.  Defendants are wrong.  Plaintiff is within its right to address new, material issues raised in Defendants' opposition papers.  *See Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) ("reply papers may properly address new materials raised in the oppositions papers to as to avoid giving unfair advantage to the answering party").  Here, Plaintiff stated in the Motion that the Notice of Default was sent in accordance with the Note Agreement.  *See* Scherzer Aff. ¶ 11.  In opposition, Defendants have challenged that assertion.  Plaintiff is now properly responding to Defendants' argument and is amplifying its contention that the Notice of Default was properly sent.  *See Toure v. Central Parking Sys. of New York*, 2007 WL 2872455, at *2 (S.D.N.Y. Sept. 28, 2007) (considering evidence submitted by plaintiffs on reply and noting "[i]t appears . . . the disputed materials do not raise new arguments, but rather respond to issues raised in opposition or amplify points already made on the initial motion").

Further, Defendants do not (and cannot) claim they were unaware of Plaintiff's DHL delivery, as Plaintiff put Defendants' counsel on notice of the DHL delivery and informed that this fact would be covered by an affidavit on reply via email on December 12, 2019, seven (7) days prior to the date Defendants filed their Opposition.  *See* Siev Decl. ¶ 10.  Defendants, however, strategically elected not to raise issue with or otherwise address this point, apparently in a misguided attempt to foreclose Plaintiff's ability to submit such evidence.  This Court, respectfully, should reject such gamesmanship.  *See Bricklayers Ins. & Welfare Fund Bricklayers Pension Fund v. P.P.L. Constr. Servs. Corp.*, No. 12-cv-3940(DLI)(RML), 2015 WL 1443038, at *8 (E.D.N.Y. Mar. 27, 2015) (considering whether defendants were "blindsided by Plaintiffs' reliance on the arguments and evidence presented on reply submission or . . . prejudiced by the Court's consideration of the arguments and evidence").  Moreover, to be clear, Plaintiff was under no obligation to produce the DHL confirmation notice because it is a document internal to Plaintiff, and not a "correspondence or document[] exchanged between the parties."  *See* ECF No. 37.

[6]  Thus, Mr. Scherzer's assertion that "Plaintiff sent Defendants the Notice of Default consistent with the notice obligations under the Note Agreement" (Scherzer Aff. ¶ 11) is correct and is supported by documentary evidence.

[7]  While Mr. Bolivar's email address was accidently misspelled, Defendants do not contest that Ms. España's email was correct or that Mr. Scherzer included additional recipients on his transmission email.  *See* Opp. at 8.

typographical error, there is no dispute that the Notice of Termination was sent to [the plaintiff] through its officers, or that the notice was intended for [the plaintiff]."); *Suarez v. Ingalls*, 282 A.D.2d 599, 600 (2d Dep't 2001) (granting summary judgment and holding "strict compliance with the contract notice provisions was not required" because there was actual notice and no prejudice). As the Second Circuit explained: a notice provision should not be construed "as if it were a common law pleading requirement under which every slip would be fatal." *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 925 (2d Cir. 1977); *see also RBFC One, LLC v. Zeeks, Inc.*, 367 F. Supp. 2d 604, 617 (S.D.N.Y. 2005) ("Notice provisions in commercial contracts should not be construed pedantically.").

Here, as established, there is no real dispute that Defendants were on actual notice of their default, nor can Defendants establish they were in any way prejudiced by the one misspelled email address, especially in light of the additional transmission through other email recipients *and* overnight delivery.[8] Accordingly, Defendants have not met their burden of proving a genuine dispute as to any material fact via their purported lack of notice.[9] *See Thor 725 8th Ave, LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509 (S.D.N.Y. 2015) (granting summary judgment for breach of guaranty and holding "strict compliance with contractual notice

---

[8] Any suggestion by Defendants that they did not receive the Notice of Default rings hollow in light of the Notice of Acceleration sent to Defendants on February 21, 2019, a document that Defendants do not contest they received. The Notice of Acceleration provides: "[o]n February 14, 2019, pursuant to Article VII of the Note Agreement, [Plaintiff] provided written notice of default." Scherzer Aff. Ex. D. If Defendants had not received the Notice of Default, it defies logic that Defendants would not object to the contents of a Notice of Acceleration, sent by Plaintiff's counsel just one week later. *See ICBC*, 2015 WL 5710947, at *2 n. 23 (finding defendant's claim that it did not receive default notice was "immaterial" because it acknowledged receipt of demand letter).

[9] Defendants cite a series of inapposite cases. For example, the Court in *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 411-12 (S.D.N.Y. 2014) examined whether plaintiff satisfied certain *statutory* notice requirements. In *Prudential Ins. Co. of Am. v. Hilton Hotels Corp.*, No. 95 CIV. 5575 (KMW), 1996 WL 340002, at *3 (S.D.N.Y. June 19, 2006), the Court dismissed plaintiff's breach of contract claim because, unlike here, the plaintiff did not allege that it provided defendant with a notice of default or delivered such notice to defendant. Likewise, in *Wells Fargo Bank, N.A. v. Eisler*, 118 A.D.3d 982 (2d Dep't 2014), the plaintiff submitted "unsubstantiated and conclusory statements" that the notice was mailed and failed to sufficiently rebut defendants' affidavits claiming defendants did not receive the notice, which Defendants here do not—because they cannot—contend. *See also Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 339 F. Supp. 2d 425, 439 (N.D.N.Y. 2004) (holding, in part, that plaintiff "never received written notice that it was in default").

provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation"); *Mahoney v. Sony Music Ent.*, No. 12 Civ. 5045(RJS)(AJP), 2013 WL 491526, at *7 (S.D.N.Y. Feb. 11, 2013) ("In evaluating a purported notice, the Court should look at whether a party's good faith effort to comply with the notice requirement was sufficient to serve the general purpose of that particular notice provision under the circumstances."); *see also Jackal Holdings LLC v. JSS Holdings Corp.*, 814 N.Y.S.2d 561 (Sup. Ct. N.Y. Cnty. 2005) (granting summary judgment in lieu of complaint and rejecting defense that plaintiff did not comply with notice provision in the parties' loan agreement).

Moreover, Petróleo, as Guarantor, waived any defense of lack of proper or sufficient notice. Petróleo "absolutely, irrevocably, and unconditionally" guaranteed full repayment of the Note and "irrevocably" waived "any defense based on or arising out of any defense of the Issuer or the Guarantor or the unenforceability of all or part of the Guaranteed Obligations," including "presentment, demand, protest and, to the fullest extent permitted by law, *any notice not provided for*" under the Note Agreement. Scherzer Aff. Ex. A at Article VI, Sections 6.01, 6.04 (emphasis added). Such waivers are "consistently upheld by New York courts" and "preclude guarantors from asserting a broad range of defenses," including, as relevant here, those relating to notice or demand by the lender. *Cooperative Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro,* 25 N.Y.3d 485, 493 (2015); *see Export-Import Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008) ("A plaintiff is excused from making [a] demand when Defendant has waived its right thereto."). Even if Plaintiff had failed to send a default notice—which, as established, Plaintiff definitively sent—Petróleo is nonetheless precluded from asserting any defenses in relation to same.[10] There is no triable issue of fact with respect to a

---

[10] *See Export-Import Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, No. 03-8554 (DCP) 2008 WL 465169, at *3 (S.D.N.Y. Feb. 6, 2008) (finding "clear and unambiguous" waiver of presentment and notice of default meant that

defense that has been waived.  *See Export-Import Bank*, 536 F. Supp. 2d at 349 (granting plaintiff summary judgment on claim for default of promissory note because defendant guarantors waived their rights to any affirmative defenses).  Thus, Defendants' claim that the Notice of Default was not sent should be rejected in its entirety.

### III.   PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE FOR RECOVERY ON THE NOTE AGREEMENT

Defendants also argue Plaintiff has not demonstrated its entitlement to summary judgment through admissible evidence.  That argument fails for several reasons.

Critically, Defendants do not contest that the Note Agreement, the Notice of Default, and the Notice of Acceleration are alone sufficient to establish the key elements of Plaintiff's claims—*i.e.*, the existence of a valid note and Defendants' failure to make due on that note.[11] The Notice of Default alone sets forth the relevant terms of the Note Agreement, notifies Defendants of their default, and identifies the ***seven*** outstanding payments Defendants owed as of the Notice of Default date.  *See* Scherzer Aff. Ex. C.  Courts in this Circuit have repeatedly held such proof is sufficient to satisfy a plaintiff's summary judgment burden.  *See U.S. v. Milgram*, No. 14-cv-1735, 2015 WL 4247165, at *2 (E.D.N.Y. July 13, 2015) (submission of a promissory note and a certificate of indebtedness satisfied plaintiff's summary judgment burden "by establishing both that the loan exists and remains unpaid"); *AAI Recoveries, Inc. v. Pijuan*, 13 F. Supp. 2d 448, 451 (S.D.N.Y. 1998) (plaintiff met *prima facie* requirements for summary judgment by showing "the execution and default of [] notes" held by plaintiff).

---

defendant "waived its affirmative defenses"); *Red Rock Commodities, Ltd. v. ABN-AMRO Bank, N.A.*, No. 94-cv-8390 (SAS), 1995 WL 714349, at *4 (S.D.N.Y. Dec. 5, 1995) (lender did not violate agreement by failing to "make demand for payment as required under the [n]ote" because borrower waived "demand of payment or presentment").

[11] While Defendants argue that Plaintiff did not send the Notice of Default to Defendants in accordance with the Note Agreement, they do not question the authenticity or validity of the Notice of Default.

Defendants advance several meritless theories to discredit the Scherzer Affidavit. They first claim Mr. Scherzer does not attest to *or* establish a basis for having personal knowledge of Defendants' failure to make the requisite payments. *See* Opp. at 10–11. But, Mr. Scherzer unequivocally swears to his "*personal involvement*" with the transactions at issue. Scherzer Aff. ¶ 1 (emphasis added). He explains the basis of his personal knowledge through his familiarity with Plaintiff's practices and procedures and his role as the company's Credit and Collections Manager (*see id.* ¶ 1)—responsible for overseeing the internal distribution of payments received by Plaintiff, monitoring third-party payment obligations owed to Plaintiff, and sending demands for payments on behalf of Plaintiff. *See* Scherzer Reply Decl. ¶ 2. Affidavits from corporate employees, like Mr. Scherzer, with responsibilities relevant to a repayment dispute are routinely admitted in the Second Circuit to support summary judgment motions. *See Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (summary judgment granted based, in part, on affidavit from member "based on his own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business that defendant failed to cure the default"); *In re Enron Corp.*, No. 03-92682A, 2006 WL 2400345, at *3 (Bankr. S.D.N.Y. July 27, 2006) ("motion for summary judgment was properly supported by the affidavits of the two corporate managers whose positions . . . supply them with the requisite knowledge of the facts").

Notably, Defendants do not present any evidence rebutting Mr. Scherzer's personal involvement or resulting personal knowledge—completely undermining Defendants' challenge of the affidavit. *See Bank of Am., Nat'l. Ass'n v. Kamico, Inc.*, No. 11 Civ. 5255 MHD, 2012 WL 1449185, at *6 (S.D.N.Y. Apr. 24, 2012) ("no question as to the competence" of a corporate officer's declaration as to monies owed because his declaration stated it was based "on personal knowledge," and "without evidence to the contrary, . . . there are no reasonable grounds on

which to disbelieve him"); *Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp*., No. CV-06-3951 (DGT), 2007 WL 2815741, at *4 (E.D.N.Y. Sept. 25, 2007) (admitting declaration in support of default because declarant stated it was based on "personal knowledge" and "[d]efendant's unsupported allegation that the declaration was not based on personal knowledge, is insufficient to prove otherwise").   In reality, the record bears out Mr. Scherzer's personal knowledge.   Mr. Scherzer, for instance, is copied on correspondence attached to the Muir Affidavit, wherein Defendants recognize the existence of outstanding debt.  *See* Muir Aff. Ex. 1. A slew of additional emails also demonstrate Mr. Scherzer's knowledge of a variety of issues concerning Defendants' indebtedness.  *See* Scherzer Reply Decl. Exs. A–K (compilation of emails involving Mr. Scherzer, including with respect to the status of the only two payments PDVSA made (on April 20, 2017 and July 20, 2017) under the Note).

Defendants also conveniently overlook the fact that Mr. Scherzer himself *signed* the Notice of Default.  *See* Scherzer Aff. Ex. C; Scherzer Reply Decl. ¶ 22.  As Mr. Scherzer attests, he would not have signed a document without personal knowledge of its contents.  *See id*.  On this record, Mr. Scherzer's "personal involvement" is "readily discernible" from the evidence submitted and satisfies Plaintiff's minimal burden on admissibility.   *See ECD Inv'r Grp. v. Credit Suisse Int'l*, No. 14-cv-08486, 2017 WL 3708620, at *3 (S.D.N.Y. Aug. 28, 2017) ("The standard for the admissibility of a lay witness's declaration is not exacting."); *Searles v. First Fortis Life Ins. Co*., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) (if "a reasonable trier of fact could believe the witness had personal knowledge" of the asserted facts, the evidence is admissible).[12]

---

[12] None of the cases cited by Defendants address scenarios remotely comparable to this matter.  *See* Opp. at 11–12. In *Quinones v. City of New York*, the only affidavit submitted in support of plaintiff's motion was an attorney declaration that lacked any meaningful detail and failed to attach any supporting exhibits.  No. 16-cv-0985 (GBD) (DF), 2018 WL 4658799 at *2 (S.D.N.Y. July 13, 2018).  Likewise, in *Howard v. City of New York*, the court rejected the admissibility of a summary judgment affidavit because, unlike here, the affiant attested he was merely "aware" of certain facts and contended others "informed him" of those facts, constituting inadmissible hearsay.  No.

To the extent Defendants suggest Mr. Scherzer's review of Plaintiff's business records in connection with his affidavit somehow dilutes his personal knowledge of the facts he attests to, that position misses the mark and is contravened by Second Circuit case law.[13]  *First*, Mr. Scherzer's Affidavit is not based solely on a review of business records.  Mr. Scherzer explains that his Affidavit is based on a review of custodial records, his familiarity with the company's practices and procedures, "*and* [his] personal involvement with the transactions discussed herein."  Scherzer Aff. ¶ 1 (emphasis added); *see also* Scherzer Reply Decl. ¶ 3.  Affidavits by corporate employees based on knowledge obtained through a review of a company's books and records are readily admissible in the Second Circuit on motions for summary judgment.  *See, e.g.*, *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (it is "axiomatic that a corporate representative may testify and submit affidavits based on knowledge gained from a review of corporate books and records"); *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp. 2d 483, 504 (S.D.N.Y. 2005) ("An affiant may also testify as to the contents of records that [he] reviewed in [his] official capacity.").

Second, contrary to Defendants' contention (*see* Opp. at 11), Mr. Scherzer attaches the relevant business records on which he bases his testimony—the Note Agreement, the Notice of Default, and the Notice of Acceleration.  *See* Scherzer Aff. Exs. C, D.  Those documents are each admissible evidence and establish Plaintiff's *prima facie* case for recovery.  *See Israel*

---

12 Civ. 0933(JMF)(JCF), 2013 WL 6925088, at *9–10 (S.D.N.Y. July 3, 2013).  In contrast, Mr. Scherzer does not qualify his personal knowledge nor is his testimony based on statements made by other individuals.

[13] Defendants' only support for this peculiar argument are two New York cases.  *See* Opp. at 12 (citing *JPMorgan Chase Bank, N.A. v. Grennan*, 175 A.D.3d 1513, 1517 (2d Dep't 2019) and *Bank of N.Y. Mellon v. Gordon*, 171 A.D.3d 197, 206 (2d Dep't 2019)).  As an initial matter, the courts in *Grennan* and *Gordon* determined the employee affidavits at issue were inadmissible because plaintiffs failed to submit copies of any default notices or other records evidencing defendants' default under the note agreements.  Mr. Scherzer, however, submits copies of Plaintiff's notices of default and acceleration and attests to his personal knowledge regarding same.  In any event, New York state procedural rules have no bearing on this Court.  When an action commenced under N.Y. CPLR § 3213 is removed to federal court, the federal court "is bound to apply the Federal Rules of Civil Procedure" and "it is pursuant to the standards governing Rule 56, Fed.R.Civ.P. that the motion may or may not be granted."  *Miller v. Steloff*, 686 F. Supp. 91, 91 n.1 (S.D.N.Y. 1988).

*Discount Bank of N.Y. v. 500 Fifth Ave. Assoc.*, 167 A.D.2d 203, 203 (1st Dep't 1990) (plaintiff established entitlement to summary judgment in lieu of complaint on guarantees by establishing "execution, delivery, demand, and failure to pay"); *E. Savings Bank, FSB v. Rabito*, No. 11-civ-2501 (KAM), 2012 WL 3544755, at *5 (E.D.N.Y. Aug. 16, 2012) (plaintiff established *prima facie* case by providing the note and mortgage and a sworn affidavit of a senior asset manager testifying to defendant's default).

Finally, Defendants' position is wholly illogical considering that Mr. Scherzer is, in effect, "proving a negative"—that Defendants did not make full payment under the Note Agreement.  His personal knowledge is derived from his role at Plaintiff and his involvement attempting—albeit unsuccessfully—to collect the remaining payments from Defendants.  *See* Scherzer Reply Decl. ¶ 4.  Mr. Scherzer swore to and attached relevant documents evidencing Defendants' lack of payment (which is not contested).  Defendants know full well they failed to make the necessary payments, and their attempts to create a triable issue of fact by questioning the Scherzer Affidavit are meritless and should be rejected.

## IV.   DEFENDANTS FAIL TO ESTABLISH A TRIABLE ISSUE OF MATERIAL FACT

In an effort to rebut Plaintiff's *prima facie* entitlement to summary judgment, Defendants claim that two triable issues of fact exist:  (i) whether Defendants were in fact in default (Opp. at 13) and (ii) "whether circumstances outside of Defendants' control made it impracticable, if not impossible, for Defendants to perform their obligations under the Note and Note Agreement." *Id*. at 4.

Defendants have also failed to present any testimonial or documentary evidence to support their defenses, despite having *nearly ten months* to do so.  Notably, in the interim, PDVSA has been actively engaged in business and legal-related activities, including (among

other things) making payments to protect its bonds which are secured by shares of Citgo so as to preserve PDVSA assets. *See* ECF No. 24, 11:14-14:9. Defendants have likewise initiated a lawsuit in this Court seeking to declare certain bonds secured by the shares of Citgo null and void. *See* Siev Decl., Ex. K. Presumably, PDVSA did not commence that action without having meaningfully investigated the facts and circumstances alleged.

Yet, when it comes to this action, Defendants complain of a lack of knowledge and documents, and rely on an attorney affidavit—rather than a fact witness—to continue delaying an adverse judgment for as long as they can. Ironically, Defendants' own defense attempts to rely on the precise type of affidavit that courts in this Circuit have repeatedly held is insufficient to meet a party's burden on summary judgment. *See Wyler v. U.S.*, 725 F.2d 156, 160 (2d Cir. 1983) ("An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight."); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004) ("The attorney's affidavit is, of course, incompetent to raise any genuine issue of material fact"). For these threshold reasons, and those below, Defendants have failed to meet their burden of establishing a genuine issue of material fact. *See Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) ("A genuine issue of fact requiring a trial cannot be raised by arguments or statements unsupported by sworn statements by persons with personal knowledge.").

### A. Defendants Have Failed to Establish a Triable Issue of Material Fact With Respect to Their Default.

Defendants, for the first time, take the position that PDVSA made three payments to Plaintiff, with the last payment on January 31, 2018. *See* Opp. at 13. On this basis, they claim a triable issue of fact exists as to whether Defendants are in default. *Id.* Defendants' contention is not only misleading, it establishes Defendants were in default of the Note Agreement.

17

For context, Plaintiff alleges that PDVSA made the first two payments due under the Note Agreement (on April 20, 2017 and July 20, 2017), but failed to make any payments due thereafter. *See* Moving Brief at 3. PDVSA was required to make quarterly payments in the amounts set forth in Schedule A-1 to the Note Agreement. *See* Scherzer Aff. Ex. A. Specifically, PDVSA was required to make a payment on October 20, 2017 and on January 20, 2018, each in the amount of $1,960,212.37. *See id.* Assuming, *arguendo*, PDVSA made a payment on January 30, 2018 in the amount of $1,960,212.37, as Defendants so contend, Defendants would nonetheless be in default of their obligations both in terms of timing as well as the amount of payment, which was insufficient to satisfy the then-outstanding total of $3,920,424.74. Thus, by Defendants' own admissions, Defendants defaulted on the note.

Defendants' argument that Plaintiff may not have produced all documents concerning additional payments falls completely flat. *See* Opp. at 13-14. Plaintiff produced the very same purported "smoking gun" email Defendants now try to rely on as part of Plaintiff's initial production. *See* Scherzer Reply Decl. Ex. E. The notion that Plaintiff "withheld" documents *based on a document produced to Defendants* makes little sense indeed.

In reality, Plaintiff did produce correspondence relating to Defendants' alleged January 2018 payment, which Defendants' opposition conveniently ignores. *See id.*, Exs. F–I. These documents prove that Plaintiff informed PDVSA that it never received the alleged payment, and that Plaintiff advised PDVSA to investigate with its originating bank why the payment was not received. *See id.* Exs. F–H. In response, nearly two weeks later, PDVSA confirmed that "intermediary bank's compliance" rejected the payment, and requested that a bank account in Euros be used to make the payment. *See id.* Ex. K. Though not the case, even if the January 2018 payment was received, Defendants did not make the payments due on October 20, 2017,

January 20, 2018, April 20, 2018, July 20, 2018, October 20, 2018 and January 20, 2019, all of which pre-date the Notice of Default.  Accordingly, there is no genuine dispute that any additional payments were actually received.  *See R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir. 1997) (explaining summary judgment is proper if the evidence submitted "show[s] that there is no genuine issue as to any material fact.").

### B.    Defendants Have Failed To Establish a Triable Issue of Material Fact Relating to an Impossibility Defense.

Under New York law, impossibility excuses performance "only when . . . performance [is rendered] objectively impossible . . . by an unanticipated event that could not have been foreseen or guarded against in the contract."  *Kel Kim Corp. v Central Mkts*., 70 N.Y.2d 900, 902 (1987).  Impossibility defenses are "applied narrowly" by courts and Defendants, as the parties asserting the impossibility defense, bear the burden of proving their non-performance under the Note Agreement was excused due to impossibility.  *Id*. (noting "that performance should be excused only in extreme circumstances").  Here, Defendants allege two primary arguments in favor of their impossibility defense, neither of which hold any weight.

### 1.    Defendants' alleged "impossibility" based on sanctions.

First, Defendants claim that they were unable to make additional payments after June 2017 in the form and manner required by the Note Agreement because sanctions imposed against Defendants in August 2017 caused PDVSA's wire transfers to be delayed and ultimately rejected by Plaintiff's designated bank.  *See* Opp. at 14–15.  Specifically, Defendants claim that when they attempted to make their already-belated third installment payment on November 21, 2017,[14] they "face[d] problems with banks refusing [their] payments in U.S. dollars," and thus, in February 2018, requested to make the outstanding payments in Euros.  *Id.* at 15.

---

[14] *See* Scherzer Aff. Ex. A at A-1 (indicating the third repayment was due on October 20, 2017).

In so arguing, however, Defendants concede not only that they had notice of their default but that performance was *entirely* possible (and, at most, simply rendered more difficult due to Defendants' own inaction).   Defendants cite to documents showing Plaintiff remained ready, willing, and able to overcome any sanctions-related complications.   For example, in December 2017, after Defendants requested that payments be deposited into a bank account outside of the U.S., Plaintiff promptly provided Defendants with account information for a CommerzBank account located abroad.   *See* Muir Aff. Ex. 3.   Moreover, after Defendants claimed that "banks refus[ed] [their] payments in U.S. dollars," Plaintiff communicated it was amenable to receiving Defendants' two, past-due payments in Euros.   *Id.* Ex. 1.   Plaintiff went so far as to draft an amendment to the Note Agreement reflecting a change in acceptable currency and, on March 2, 2018, sent Defendants that amendment.   *Id.*

While Defendants claim it is "unclear . . . if the amendment was ever finalized," that is not true.   Opp. at 5.   In the weeks following the draft amendment, Plaintiff sent follow-up emails to PDVSA regarding the status of the overdue payments, but never received a response to its inquiries.[15]   *See* Siev Decl. Ex. G.   Put simply, Defendants now impermissibly seek to rely on their own inaction to avoid their contractual responsibility.   *See U.S. v. Int'l Bhd. of Teamsters,* 816 F. Supp. 864, 874 (S.D.N.Y. 1992) ("the defense of impossibility is not available to one who . . . did not take *virtually every action within his or her power to perform*") (emphasis added); *see also Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[Appellant] makes no claim that it took virtually every action within its power to perform its duties under the contract and therefore cannot assert the defense of impossibility.").

---

[15] Plaintiff went so far to try and schedule a meeting with Defendants to discuss the amendment and outstanding payments, but Defendants cancelled that meeting, and did not respond to Plaintiff's multiple requests to reschedule the meeting.   *See id.*

Even without an executed amendment to the Note Agreement, Defendants have not established it was "objectively impossible" for them to pay down their debt. *Kel Kim*, 70 N.Y.2d at 902. Defendants, for example, received from Plaintiff written authorization to make the outstanding payments in Euros. *See* Scherzer Reply Decl. Ex. K (explaining Plaintiff "is in the position to receive the payment in [euro] currency" per Defendants' request). This written authorization alone is sufficient to constitute an amendment to the payment provision in the Note Agreement. *See* Scherzer Aff. Ex. A § 9.08. Thus, Defendants could have satisfied their debt obligations (albeit in other currencies), but elected not to do so.

Notably, multiple news reports make clear that, since August 2017, PDVSA paid multiple other creditors (or received payments) in Euro-denominated transfers.[16] Accordingly, Defendants' currency issues do not rise to the level of impossibility. *See Scanlan v. Devon Sys., Inc.*, No. 89-cv-1634 (LMM), 2000 WL 218389, at *2 (S.D.N.Y. Feb. 24, 2000) (denying defendants motion for summary judgment premised on impossibility because "the impossibility . . . was removed"); *see also ZBD Constructors, Inc. v. Billings Generation, Inc.*, No. 09-cv-6667, 2011 WL 1327144, at *10 (S.D.N.Y. Mar. 25, 2011) (rejecting plaintiff's impossibility argument because performance, "while both cumbersome and expensive, . . . was in fact possible").

### 2. Defendants' alleged "impossibility" based on SDN designation.

Defendants also claim PDVSA's designation as a Specially Designated National and Blocked Person ("SDN") on January 28, 2019, and the supposed impacts resulting from such

---

[16] *See e.g.*, Sarah Kinosian, *Maduro Says 'thank God' for Dollarization in Venezuela*, REUTERS (Nov. 17, 2019, 3:10 PM), https://www.reuters.com/article/idUSKBN1XR0RV, attached to the Siev Decl. as Exhibit I ("Under increasingly severe U.S. sanctions . . . [t]he government and state oil company PDVSA have even begun to pay contractors with the European currency."); Saeleha Mohsin & Jennifer Epstein, *Trump Slaps De-Facto Oil Ban on Venezuela*, BLOOMBERG (Jan. 28, 2019 3:30 PM), https://www.bloomberg.com/news/articles/2019-01-28/trump-sanctions-venezuela-oil-company-pdvsa-rubio-announces, attached to the Siev Decl. as Exhibit J ("PDVSA has been moving away from dollar-denominated transactions in the past couple of years, since the Trump administration announced financial sanctions in August 2017. The company sells oil to clients in the U.S., Europe and Asia and requires payment in euros, and buys gasoline and diesel for payment in euros as well.").

designation, made it impossible to pay Plaintiff the additional amounts due from that day forward. *See* Opp. at 16–17. This assertion is wholly unsupported and without merit. Defendants do not offer any evidentiary support whatsoever (via affidavit or otherwise) for their contention that U.S. sanctions rendered their performance impossible. Without such support, Defendants cannot meet their burden of establishing impossibility.

Moreover, Defendants ignore the fact that more than *fourteen months* elapsed in which they could have made overdue payments before receiving their SDN designation. During that timeframe, Defendants were required to make *five* installment payments, but instead elected to simply not pay. *See* Scherzer Aff. Ex. A at A-1. Making matters worse, after sanctions were imposed against PDVSA in August 2017, Defendants were indisputably on notice of additional, foreseeable roadblocks—like the SDN designation—that would make it exponentially more difficult to pay Plaintiff. Defendants bear direct responsibility for failing to take any meaningful action with regard to their debts to Plaintiff.[17] Moreover, as discussed, PDVSA has, in fact, avoided U.S. sanctions (and its SDN designation) through transacting with counterparties in Euro-denominated transfers. *See* Siev Decl. Exs. I–J. These facts further undermine Defendants' required showing of "objective impossibility." Accordingly, Defendants have not satisfied the high burden of demonstrating their non-performance under the Note Agreement was excused due to any objective and actual impossibility.

---

[17] Plaintiff takes issue with Defendants' assertion that they bear absolutely no responsibility or role in the imposition of sanctions. It strains credibility for Defendants to suggest U.S. sanctions—directly targeted at PDVSA—are due to circumstances entirely beyond their control. *See Nat'l Iranian Oil Co. v. Ashland Oil Inc.*, 817 F.2d 326, 333 (5th Cir. 1987) (Plaintiff "as part of the revolutionary Government . . . certainly bears responsibility for creating the chain of events making it impossible for an American entity reasonably to travel to and to engage in quasi-judicial proceedings in Iran. Thus, [plaintiff] cannot assert the doctrine of impossibility"); *MG Refining & Mktg., Inc. v. Knight Enters., Inc.*, 25 F. Supp. 2d 175, 188 (S.D.N.Y. 1998) ("the rule in New York is that although governmental orders barring an action are normally grounds for an impossibility defense, impossibilities caused by such orders will excuse a party's performance only if the fault of the party owing performance did not contribute to the order").

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in Plaintiff's Motion, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment in its entirety, along with such further relief as the Court deems just and proper.

Dated:   December 23, 2019
         New York, New York

                                 REED SMITH LLP

                                 By:   */s/ Jordan W. Siev*
                                       Jordan W. Siev
                                       Geoffrey G. Young
                                       Nicole Lech
                                 599 Lexington Avenue
                                 New York, NY  10022
                                 Tel. (212) 521-5400
                                 Fax. (212) 521-5450

                                 *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on December 23, 2019 on counsel of record via the Court's CM/ECF system.

BY:  */s/ Jordan W. Siev*_____
          Jordan W. Siev